FREDERICK A. BRYAN, Plaintiff in Error, *v.* CHARLES V. DYER, Defendant in Error.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

An agreement to pay a certain sum to A B, in the event that a custom house, post office buildings, etc., shall be erected in a particular locality, is a binding obligation; especially so if A B shows that he has been at expense, trouble, etc., in effecting such location.

The erasure of an indorsement of payment on such an obligation would not vitiate the obligation, if the person for whose benefit it was made, received the benefit thereof.

THIS was an action of assumpsit, commenced by the defendant in error against the plaintiff in error, in the Superior Court of Chicago. Damages laid at $500.

The plaintiff's declaration comprised two counts, as follows:

For that whereas the said defendant, and one John Sollitt, and one Jacob Harris, heretofore, to wit, on the 5th day of January, in the year 1855, to wit, at Chicago in said county and State, made a certain agreement in writing to and with the said plaintiff for a valuable consideration, therein expressed, and then and there delivered the same to said plaintiff, which said agreement, subscribed by the said defendant and said Sollitt, and Harris, in their own respective handwriting, is in the words and figures and characters following, viz.:

" We, the undersigned owners of real estate, situate in the vicinity of the corner of Monroe and Dearborn streets, where the buildings of the United States are proposed to be located for a post office, custom house, and United States court room, do hereby promise and agree, for a valuable consideration to us in hand paid, to pay to Charles V. Dyer, in the event the Government of the United States shall locate and erect the said buildings on said grounds, but not otherwise, the sums set opposite our respective names, as by us severally subscribed.

Dated Chicago, January 5, 1855.

| | |
|---|---|
| F. A. Bryan, - - - - - - | $500.00 |
| John Sollitt, - - - - - | 200.00 |
| Jacob Harris, - - - - - - | 50.00 " |

By reason whereof, the said defendant, F. A. Bryan, became liable to pay to said plaintiff the sum of $500, so by him subscribed, whenever the Government of the United States should have located and erected said buildings on said grounds referred to in said agreement. And the plaintiff avers that the Government of the United States heretofore, to wit, on the 1st day of May, A. D. 1860, has located and erected the said buildings for a post office, custom house, and United States court room, on said grounds referred to in said agreement, at the corner of Monroe and Dearborn streets, in Chicago aforesaid, of which the said defendant, to wit, on the day and year last aforesaid, at Chicago, in said county of Cook, had notice. By means of which said premises, the said defendant became liable to pay to said plaintiff the sum of $500; and being so liable, in con-

sideration thereof, then and there undertook and promised to pay the same to the said plaintiff whenever thereunto afterwards requested.

Also for that whereas the said defendant afterwards, to wit, on the 5th day of January, A. D. 1855, at Chicago aforesaid, made and delivered to the said plaintiff, a certain other agreement in writing, subscribed by the said defendant, of the same date, words, figures, characters, tenor, and effect, as that set forth in the foregoing count of this declaration, whereby, for the consideration therein stated, the said defendant promised to pay to said plaintiff, by the name of "Chas. V. Dyer," the sum of $500, set opposite the said defendant's name, (the words and letters "F. A. Bryan," subscribed to said agreement, meaning the said defendant, Frederick A. Bryan, and being his signature,) in the event the Government of the United States should locate and erect the buildings of the United States for a post office, custom house, and United States court room, on grounds at the corner of Monroe and Dearborn streets, where said buildings were at that time proposed to be located. And the plaintiff avers that the Government of the United States, before the commencement of this suit, to wit, on the 1st day of May, 1860, had located and erected the said buildings for a post office, custom house, and United States court room, on said grounds, at the corner of Monroe and Dearborn streets, referred to in said agreement, whereof the said defendant, to wit, on the day and year last aforesaid, had notice. Whereby the said defendant became liable to pay to said plaintiff the said sum of $500, in this count mentioned, whenever thereunto afterwards requested; and being so liable, the said defendant afterwards, to wit, on the day and year and at the place last aforesaid, undertook and faithfully promised the said plaintiff to pay to him the said last mentioned sum of $500 whenever thereunto requested.

Yet the said defendant hath not paid the said several sums of money, or any or either of them, or any part thereof, to the said plaintiff, although often requested to do so, but hath hitherto wholly refused, and still refuses to do so, to the damage of plaintiff of $500, and therefore he brings suit, etc.

Bryan *v.* Dyer.

To which the defendant filed his plea of the general issue, and gave notice that on the trial of said cause, he would show that the said writing obligatory or contract, was made and entered into on the part of defendant without any consideration to him, said defendant, and that said defendant signed said contract without any good and valid consideration for so doing; and that said contract as above was and is void and of no force or effect in this, to wit, that the same was made on the part of said defendant without consideration, and that the same was and is illegal and void, and of no binding effect or force upon the defendant; and that nothing was paid by plaintiff, or any other person or persons in his behalf, to the defendant for signing said writing obligatory, nor was or is the same binding or obligatory upon the defendant in this, to wit, that the consideration, if any, for the defendant signing said contract was illegal, and that said contract was made and entered into on the part of the defendant upon the sole consideration that the plaintiff promised to use his influence with the Government of the United States, in causing said Government of the United States to locate certain government buildings, to wit, the post office, custom house, and United States court room, buildings then about to be built in the city of Chicago, upon the corner of Monroe and Dearborn streets, in said city of Chicago; and that the promise to use his (said plaintiff's) influence with said Government, in causing said buildings to be located as above, was the sole and only consideration made to defendant for his signing said contract and none other.

And that at the trial the defendant would show that the plaintiff was indebted to the defendant in the sum of $500, in goods, wares and merchandise, sold and delivered to said plaintiff by the defendant, a bill of which said goods, etc., is hereto attached, which amount the defendant will offset against plaintiff's demand.

Whereupon issue was joined, and the cause was tried before Goodrich, Judge, and a jury, on the 5th day of April, 1861, and a verdict found for the plaintiff, the damages being assessed at $234.68.

Motion for a new trial was overruled, and judgment rendered for the plaintiff on the verdict.

The defendant asked the court to instruct the jury as follows:

1. That if the jury believe, from the evidence in the case, that the only consideration for the promise, on the part of the defendant, was that the plaintiff, Dyer, should use his influence with the Government of the United States to have said Government locate said government buildings, in the contract mentioned, on the corner of Monroe and Dearborn streets, then such consideration is not legal, and the plaintiff cannot recover in this action.

2. That if the jury believe, from the evidence in the case, that the only consideration for the promise of the defendant to pay Dyer $500, was that Dyer was to use his personal influence, either as a government agent or as a private citizen, to induce said Government to locate the government buildings, referred to in said contract, on the corner of Monroe and Dearborn streets, then such consideration is not sufficient to sustain the action, and the plaintiff cannot recover.

3. That the jury are to take the whole contract itself, offered in evidence by the plaintiff, into consideration, and the terms and conditions thereof taken together, and in connection with the parol evidence, and if they believe that the only consideration given for said promise of defendant to pay the sum of $500 to Dyer, was said Dyer's personal influence with the Government of the United States to cause said Government to locate the buildings therein mentioned on corner of Monroe and Dearborn streets, then said consideration was illegal, and insufficient to sustain the present action, and plaintiff cannot recover.

4. That if the jury believe that the object of the contract offered by the plaintiffs in the case, was to influence the decision of the Government of the United States, upon a question of public importance and convenience, which appertained to the city of Chicago, and in which the whole community had an interest to have the best location for said post office, etc., and such location as would best subserve the general interests of the city, then any private agreement that has for its object the establishment of such buildings in a particular locality, to the exclusion of others, is contrary to

public policy, and is illegal; and any promise to aid any such design will be invalid.

5. That it is incumbent upon the plaintiff to show a good and valid consideration for the promise of defendant to pay the $500 in question; and though the contract in question has expressed therein the terms "for a valuable consideration," without showing what that consideration was, yet the jury may gather from the whole contract itself, and other evidence offered by the parties, taken together, what the real consideration was, and may find for the defendant, if they believe, from the whole contract and other evidence, that it comes within the principles embraced in the first, second, third and fourth instructions asked by defendant.

6. That the plaintiff shall introduce proof only to sustain his allegations in his declaration; and if he alleges in his declaration that the government buildings were located on the corner of Dearborn and Monroe streets after the contract was made, he cannot show that the buildings were located there before the contract was signed.

The court refused the fourth and sixth instructions asked by the defendant, and altered the fifth instruction by striking out the first paragraph thereof, thereby leaving the fifth instruction as follows:

5. Though the contract in question has expressed therein the terms "for a valuable consideration," without showing what that consideration was, yet the jury may gather from the whole contract itself, and other evidence offered by the parties, taken together, what the real consideration was, and may find for the defendant if they believe, from the whole contract and other evidence, that it comes within the principles embraced in the first, second and third instructions asked by defendant.

E. W. Evans, for Plaintiff in Error.

"Any contract or promise to pay money to another, to obtain such person's influence upon the decision of questions affecting public or private rights, with a view to considerations other than those affecting those rights, *tend injuriously to affect the rights and interests of third persons;* are contrary

to public policy; in law are void, and cannot be enforced." *Fuller* v. *Dana*, 18 Pick. R. 479.

"The law goes further than merely to annul contracts, when the obvious and avowed purpose is to do, or cause the doing, of unlawful acts. It avoids contracts and promises made with a view to *place one under wrong influences*—those which offer him a temptation to do that which may injuriously affect the rights and interests of third persons." Same case, page 481.

1. It is contrary to public policy, and principles of fair dealing, as affecting the general interests of Chicago, and subverting or sacrificing such interests to private gain. For any reward, or promise of reward, to purchase the influence of any person, either of public or private position, to obtain the location of the government building in question at the point specified in the contract, must be made at the expense of *other interests* than those of the parties before the court. And such promise is contrary to the general rights of the public, and directly sacrifices the interests of the public to private interests.

2. Because, under such influence as would necessarily grow out of all such promises as those set forth in defendant's contract, there would be a secret and unknown power at work with the Government at Washington, which influence the Government itself could not guard against, because of its unknown character, and yet the same would necessarily be *felt and acted upon*, and would ultimately fix the locality of the government buildings at the very point where this private interest requires; and thus the general interests of the city in this respect would be wholly or comparatively disregarded.

We are not called upon to go beyond our own State, or forced to search for judicial precedent beyond our own Supreme Court, for authority to sustain the defense in this case, upon general principles well established and recognized, as applicable to the case before the court. We refer the court to the case of *Randolph County* v. *Jones*, Breese, 103.

This agreement is obnoxious to the further objection, more

powerful than all others, that the consideration of the promise of Bryan was illegal, from being against the *general policy of the law* to countenance or sustain any such promises.

As a fraud upon the public. *Fuller* v. *Dana*, 18 Pick. 484 ; *Randolph County* v. *Jones*, Breese, 103 ; *Cook* v. *Shipman*, 24 Ill. 614 ; *Case* v. *Garrish*, 15 Pick. 49 ; *Meredith* v. *Ladd*, 2 N. H. 517 ; *Gullick* v. *Bailey*, 5 Halsted, 91 ; *Thompson* v. *Davis*, 13 Ill. 112 ; *Doolin* v. *Ward*, 6 Ill. 194 ; *Wilbur* v. *How*, 8 Ill. 44. Also, 1 Story on Eq. 370 ; Chitty on Contracts, page 578.

Also, the further cases on same point : *Wood* v. *McCann*, 6 Dana, 366 ; *Pingry* v. *Washburn*, 1 Aikin, 264 ; *Sharp* v. *Trese*, 4 Halsted, 352 ; *Craig* v. *Mepourne*, Peters, 184. Also 5 Halsted, 84, and 3 id. 54.

As an agreement having for its object to induce, or influence a public officer to neglect his duty. Chitty on Contracts, 677 ; *Denny* v. *Lincoln*, 5 Mass. 285 ; *Cornhill* v. *Perkins*, 5 id. 544 ; *Ayers* v. *Hutchins*, 4 id. 370.

Because there is no mutuality of promise. Chitty on Contracts, 9, 10, 12, 15 ; Id. 27, 28, 29 ; 3 Turn. R. 653 ; 6 East, 48 ; 4 Bingham, 660.

Fraud vitiates all contracts. And the illegality of the consideration, or if contract is made under mistake of fact, the same can be given in evidence under the general issue. 1 Starkie R. 434 ; 15 I. R. 230 ; Bailey on Bills, 342 ; Chitty's Pleadings, vol. 1, p. 420 ; 11 Wend. 107 ; 1 Gilm. 85.

I deduce the following, as the general principle of the law pertinent to the question, to wit :

" If, on production of the instrument, it appears to have been altered, it is incumbent on the party offering it in evidence, to explain this appearance ; every alteration on the face of a written instrument, detaches from its credit and renders it suspicious ; and this suspicion, the party claiming under it, is ordinarily held bound to remove." 1 Greenl. on Ev., page 677, sec. 564.

Same doctrine in cases of *Gillett et al.* v. *Sweat*, 1 Gilm. 489 ; *Human* v. *Dickinson*, 5 Bing. 183 ; *Knight* v. *Clements*, 8 Ad. & Ellis, 215 ; 8 Metcalf, 406 ; 11 Conn. R. 531 ; 9

Peters, 789; 2 Man. & Gr. 890. See also case of *Montag* v. *Lynn*, 23 Ill. 557. Also, 25 Ill. 66; *Hodge* v. *Gilman*, 20 Ill. 440, 441; *Walters* v. *Short*, 5 Gilm. 255.

And the cases referred in 1 Gilm. 489; 4 N. H. 171; 5 Greenl. 204; 2 Wend. 255; 2 Dall. 304; 2 Starkie R. 278; 13 N. H. 385; 22 Wend. 388; 11 N. H. 395.

For we must either require the holder to offer evidence explaining the material mutilation, on *all occasions*, before the paper is submitted to the jury; or, he may be *excused on all occasions.* In other words, there is no such rule in fact, as that the jury are to pass upon a material erasure from an examination of the paper alone, without any proof being given by the holder.

Nor can it be replied in this case, that *we have had the bene-fit of the payment, whatever it was,* by the verdict of the jury allowing the amount in our favor.

It is a sufficient reply to such suggestion, that we do not know whether we have received the full benefit of the erasure or not.

True, the jury allowed us a certain sum of money, which they claim was erased, as indorsed on the back of the paper; but how did the jury know but that the erasure was of some other sentence than the simple acknowledgment of so much money paid by F. A. Bryan? If the jury could, by a minute examination of the paper, read the figures $265.32, which were attempted to be erased by the holder, the other side even will not contend that any *other words or figures* of the erased sentence, can, by any effort, be made out, why then may we not claim that, underlying this covering of ink, which really obscures this whole sentence of indorsement, the original sentence was, "received $265.32 of F. A. Bryan, on the within, which is to be in full payment of his subscription"? All this might be, and there be nothing improbable about it.

In conclusion, it is most respectfully submitted, that in allowing such a practice as was adopted by the court below, that such a document may be read to the jury, and the jury pass upon it without proof, is establishing, as a precedent, that

the holder, by assignment of my promissory note for $500, on which I have paid $250, and which payment is duly indorsed on said note, and *such indorsement is all the evidence I may have of the payment,* may sue me for the full amount of such note, and may *erase the indorsement,* offer the note in evidence to the jury, without any evidence explanatory of such erasure, and in case the jury, by chance, can *guess at the. amount of money crossed out on the back of the note, they can allow it to me or not,* as they happen to think of the case; otherwise, I have no proof of the payment, and must suffer from the most wrongful act of the holder of such paper.

WAITE & TOWNE, for Defendant in Error.

The authorities cited for the plaintiff in error, that it was illegal to procure the location of the post office, have no application, as that was not the consideration of the subscription paper, *and when it was made, the post office had been already located.*

There was an indorsement on the back of the subscription paper, of $265.32, which appeared to be erased. The jury allowed the defendant in their verdict that sum on the sole proof of the erased indorsement. The defendant consequently has no reason to complain. The true rule is, " that the obliteration of the indorsement does not destroy the subscription; such indorsement constitutes no part of the subscription; it is no more than a receipt." 2 Denio, 416; 5 Iredell R. 276, 397; 10 Mo. R. 207; Chitty on Contracts, 559; 13 East, 192; 14 N. Y. R. 289.

BREESE, J. We think this case too plain for much argument. It was an action of assumpsit, brought on the following agreement:

" We, the undersigned owners of real estate, situate in the vicinity of the corner of Monroe and Dearborn streets, where the buildings of the United States are proposed to be located for a post office, custom house, and United States court room, do hereby promise and agree, for a valuable consideration to us in hand paid, to pay Chas. V. Dyer, in the event the

Government of the United States shall locate and erect the said buildings on said grounds, but not otherwise, the sums set opposite our respective names, as by us severally subscribed.

Dated Chicago, January 5, 1855.

| | | | | | | |
|---|---|---|---|---|---|---|
| F. A. Bryan, | - | - | - | - | - | $500.00 |
| John Sollitt, | - | - | - | - | - | - 200.00 |
| Jacob Harris, | - | - | - | - | - | - 50.00 " |

The defendant pleaded the general issue, and gave notice under it that he would show the agreement was entered into without any consideration, and that the contract was illegal and void—that nothing was paid by plaintiff to defendant for signing the writing, and that the contract was made and entered into by the defendant upon the sole consideration, that the plaintiff promised to use his influence with the Government of the United States to cause it to locate certain government buildings upon the corner of Monroe and Dearborn streets in the city of Chicago, and that the promise to use his influence with the Government in causing the buildings to be located at said place, was the sole and only consideration made to defendant for his signing the contract, and none other; and also gave notice of a set-off for goods, wares, and merchandise, sold and delivered by the defendant to the plaintiff.

At the trial, when the agreement was offered in evidence, it was objected to by the defendant on the ground that it showed upon its face that the consideration of the promise was illegal and void; and, further, that it appeared there was a material erasure of an indorsement on it, which the defendant insisted should be explained before it could be read to the jury.

These objections were overruled, the paper read, evidence heard, and a verdict rendered for the plaintiff, and damages assessed at two hundred and thirty-four dollars and sixty-eight cents.

The proof shows that the Government decided to locate the buildings at the corner of Monroe and Dearborn streets, some months before the agreement was signed by the defendant,

namely, November 29, 1854, and that they were completed, located and enclosed, before the commencement of this suit. It also shows that defendant owned property near where the building was located, and the testimony of Huntington fully discloses the interest the defendant had that the buildings should not only be proposed to be located at the point desired, but that they should be in fact erected and completed. It also shows the expense and trouble the plaintiff had to undergo, to remove even the slightest objections the Government urged to the title to the property, after the location was agreed upon.

It shows also that the plaintiff had become nearly discouraged by the objections thus set up, and thought of abandoning the project, the title being guaranteed by the plaintiff. In this emergency, the contract was made with the defendant and others, who said he was willing to pay his share with Sollitt and others, to further the object, and expressed his desire to pay his portion of the expenses, to have the buildings located at the designated point. It also shows that the plaintiff was compelled to make a journey to Washington city to clear up supposed objections to his title—also to visit the legislature of the State to procure the enactment of a law ceding the jurisdiction to the General Government. It shows also payments of large sums of money in buying up supposed conflicting titles, and in getting tenants to yield possession, all which was done after the Government had located the buildings. It was in view of all these matters, that the defendant made the promise. We see nothing illegal in this promise, or a want of consideration. The defendant was interested that the building should be erected at the place where the Government proposed to locate it, and he agreed to pay his share towards the removal of the difficulties attending the subject, after the location had been determined on, so that the building might be carried out to completion, whereby his property would be greatly enhanced in value. He felt, like other property holders in that vicinity, that it was hardly just that the plaintiff should be at the trouble and expense and money outlays to accomplish an object desired by all, and mutually beneficial.

There is not one particle of proof to show that any part of the consideration for this promise was, that plaintiff should use his influence with the Government to cause this building to be located at any place. The building was located before the promise was made. The issues tendered by the defendant are not made out in a single particular.

The objection to reading the letter of the Secretary of the Treasury, of November 29, 1854, was not a good objection as stated in the record. The objection as it there appears was because the letter showed that the building was located before the date of the contract declared on. This was no objection, for that was not the gist of the action, or in issue. If the proper objection had been made, the letter would no doubt have been excluded. It being a paper which did not prove itself, proof of the handwriting of the secretary might have been demanded and insisted upon.

The first three instructions asked by the defendant were given though they might well have been refused, as not a particle of proof was offered to justify them or either of them, nor a circumstance developed to justify such an inference.

The fourth instruction was properly refused, as it is not against law for persons to combine to procure the establishment of a public building or other work in a particular locality to the exclusion of other points, provided neither bribery nor other undue means are used to accomplish the object. It is not contrary to public policy, nor illegal. It should have been refused for another reason: there is nothing proved in the case on which to hang it, and the jury was not asked to believe it from the evidence, but to act on their own crude notions or imperfect knowledge of a supposed fact, or state of facts.

The fifth instruction was properly modified, and was correct as given, with the exception that there should have been no reference to the first, second and third instructions given for the defendant, but as that was for the benefit of defendant, he cannot complain. The issue was such a consideration as stated in the notice, and no other, and although the agreement expressed on its face to be for a valuable consideration, the defendant had the right, under our statute, to show it was

given without consideration, or for an illegal consideration, neither of which did he succeed in doing.

As to the erasure of an indorsement on the writing, we cannot think it should vitiate the whole instrument. The most the party could demand would be, that he should be restored to the benefit of the indorsement as it was originally made. This was done by the jury. The defendant received a credit for the amount indorsed and erased, and which, judging from the figures, was the amount of his bill for goods, loans, and merchandise sold and delivered. The indorsement has no more validity or effect than a receipt, and if expunged, the debtor would still have the benefit of it, if he could establish the contents; and if he could not positively show the precise contents, there is a natural presumption, not to be repressed, of which the jury will always feel the influence in making up the verdict. To say, then, the obliteration of an indorsement of a payment on the note makes void the note, is to say that the destruction of a receipt for such a payment has the same effect, which is preposterous. The judgment is affirmed.

*Judgment affirmed.*