## HARE v. PHAUP.

No. 24.    Opinion Filed May 12, 1909

(101 Pac. 1050.)

CONTRACTS—Validity—Public Policy—Location of Post Office. A contract providing for the payment for services and expenses incurred in procuring the establishment of a post office in a city in and upon a certain block therein, the payments thereunder to continue so long as said post office shall be there maintained not to exceed ten years, is contrary to public policy and void.

(Syllabus by the Court.)

*Error from Probate Court, Pottawatomie County; W. N. Maben, Trial Judge.*

Action by Alfred Hare against T. M. Phaup. Judgment for defendant, and plaintiff brings error. Affirmed.

*Dudley B. Madden (W. L. McFall,* of counsel), for plaintiff in error.

*Roscoe C. Arrington,* for defendant in error, cited: *Woodman v. Innes,* 47 Kan. 26; *Elkhart County Lodge v. Crary,* 98 Ind. 238; *Filson v. Himes,* 5 Pa. 452; *Meguire v. Corwine,* 101 U. S. 108; *Tool Company v. Norris,* 2 Wall. 45; Wilson's Rev. & Ann. St. § 813.

DUNN, J.    This cause comes to this court on a transcript of the record containing the bill of particulars, demurrer, and judgment rendered thereon in the probate court of Pottawatomie county. The bill of particulars filed in the cause declared upon the following contract:

"Be it remembered that for and in consideration of the ser-

vices of and expenses incurred by Alfred Hare in procuring the establishment of the United States post office of the city of Tecumseh, O. T., in and upon the west side of block 52 of said city, I hereby promise to pay to the said Alfred Hare the sum of $5 per month, monthly in advance, from the date of the removal of said post office to said block, and so long as said post office shall be maintained thereon, not to exceed ten years."

Designating the parties by the titles they bore in the lower court, it is the contention of defendant that the contract is without consideration and void because the subject matter thereof was not such as constitutes a legal subject of contract, and that dealing therein was against public policy and no enforceable obligation could grow out of it. Counsel for plaintiff argues in support of the contract that one person or many who might own a building or secure the right to the possession thereof by renting the same from its owner may lawfully let the same to the government of the United States for post office purposes at a nominal rent and a contract of contribution between the original parties be valid, and argues from this conceded proposition, that which in our judgment does not follow, to wit, that a contract such as the one before us providing for payment of services and expenses incurred in procuring the establishment and the maintenance of a post office at a certain point or place in the city, which contract shall continue for a period of ten years, would likewise be valid. He also argues that a contract such as the one in the case at bar is not necessarily an unlawful one so long as the procurement of the location of the post office is accomplished by fair and legitimate business methods; in other words, that no undue influence be exercised nor the principles of sound public policy be violated. We do not believe a discussion of the first proposition mentioned will be of value, as it is not involved in this case, but as counsel offers three cases to support his latter proposition, and as they seem to lend color to it, we will consider it. These cases are as follows: *Fearnley v. De Mainville et al.*, 5 Colo. App. 441, 39 Pac. 73; *Bryan v. Dyer*, 28 Ill. 188; *Beale et al. v. Polhemus*, 67 Mich. 130, 34 N. W. 532.

The case first cited—*Fearnley v. De Mainville et al.*—is from the Court of Appeals of Colorado. In this case there was an agreement of property owners and business men of the immediate neighborhood of the post office to pay the owners of a building in which it was located a reasonable rent on the same, provided said owners would tender such a lease that the government would accept it and continue the post office where it was. The court held that the parties agreeing to pay the rent as provided were liable, and that the consideration for the contract was valid.

The case from the Supreme Court of Illinois (*Bryan v. Dyer*) was one wherein subsequent to the location of the Custom House and Post Office Building at Chicago there arose obstructions in the way of titles and leases to the land on which the same was to be built, and certain business men, owners of real estate, situated in the vicinity, agreed with the plaintiff in that case that they would pay him the sums set opposite their names on the building being located and erected at the point where it was then agreed upon. The services rendered by plaintiff were in relieving the proposed location of the leases and clouds on the titles as above mentioned. The court in the consideration says:

"There is not one particle of proof to show that any part of the consideration for this promise was that plaintiff should use his influence with the government to cause this building to be located at any place. The building was located before the promise was made."

And the court allowed plaintiff to recover.

The holding of the Supreme Court of Michigan in the case of *Beale et al. v. Polhemus, supra,* more nearly supports the contention of counsel for plaintiff than either of the other cases. In that case Polhemus signed a contract to pay Beale $600 in consideration of his constructing a building and on its being occupied by the post office. It was contended in that case, as in this, that, the contract was void as opposed to public policy, but the court allowed Beale's executors to recover on the contract because it was not shown that he used any improper or undue means to gain his point or to accomplish his end, and the court declined

to presume that he used his personal power which was conceded to have been very great, in any corrupt or unseemly manner or in violàtion of any public policy. In so holding, it is our judgment that the learned court failed to take into consideration the reasons fundamentally underlying the great weight of judicial expression where this question has been presented to the courts for consideration. Cases almost without number could be cited and quoted from which hold that contracts of this character are not void because of the conclusion that corruption and wrong-doing and undue influence would be the certain result thereof, but on account of the recognition by them of corrupting tendencies of such contracts. "Lead us not into temptation" is the divine injunction obligatory upon all, and the declaration of the courts of this country when contracts of this character are presented to them, holding them void because of this tendency, is but a recognition of the doctrine contained in this scriptural precept and its salutary application to contracts which might unduly tempt or incline men to improperly influence their fellowmen, holding positions of confidence and trust. We believe that the principle invoked by counsel for defendant is a salutary one, applicable to the contract here in question. That such a contract is invalid and nonenforceable is the conclusion of a great majority of the courts which have had occasion to deal with it. A few of the cases in which the question has been considered and passed upon where in our judgment the rule is correctly declared are as follows: *Woodman v. Innes,* 47 Kan. 26, 27 Pac. 125, 27 Am. St. Rep. 274. This case is cited approvingly in Harriman on Contracts, § 180; *Elkhart County Lodge v. Crary,* 98 Ind. 238, 49 Am. Rep. 746, cited approvingly to sustain one of the rules laid down by Mr. Greenhood in his work on Public Policy, p. 313; *Filson v. Himes,* 5 Pa. 452, 47 Am. Dec. 422; *Meguire v. Corwine,* 101 U. S. 108, 25 L. Ed. 869; *Tool Company v. Norris,* 2 Wall. 45, 17 L. Ed. 868; *Oscanyan v. Arms Co.,* 103 U. S. 261, 277, 26 L. Ed. 539.

In the case of *Woodman v. Innes, supra,* from the Supreme Court of the state of Kansas, the court held in the syllabus that:

"Any contract made for the purpose of securing the location of a public office, such as a post office, in any certain part of a city or elsewhere, or which prevents, or tends to prevent, the change or removal of such office, when the necessities of business or the interest of the public demand such change or removal, is opposed to public policy and void, as tending to the injury of the public service, and as subordinating the public welfare to individual convenience or gain."

This case was similar to the one from the Colorado Court of Appeals, and to the supposed case put by counsel for plaintiff, in that certain parties whose places of business were near the location of the post office agreed with the owner of a building in which it was located to pay him the rent therefor, provided the office was permitted to remain therein. On the refusal to pay the rent the landlord brought an action to recover under the contract. The Supreme Court even under this state of affairs held:

"Under the allegations of the petition the location of the post office in this case was to be restricted to one place. The government locates only one post office in a city, and such office is a public one, and the general public has an interest in the location of the office. Any contract which is made for the purpose of securing the location of such an office, or which prevents, or tends to prevent, the change or removal of such an office, when the necessities of business or the interest of the public demand a change or removal, tends to the injury of the public service, and therefore is against public policy. Such contracts as referred to in the petition tend to improperly influence those engaged in the public service, and also tend to subordinate the public welfare to individual convenience or gain. Parties should not be permitted to make contracts which induce personal or private interest to overbear public duty or public welfare. *Elkhart County Lodge v. Crary*, 98 Ind. 238, 49 Am. Rep. 746. Counsel for plaintiffs say that the written contract of the parties is enforceable, because it is not shown that it is unfair, or that any undue influence was to be used to retain the post office on Main street. Such contracts lead to secret, improper, and corrupt influences, to the injury of the public. In this view we cannot think it good policy for the courts to enforce such contracts. 'All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to pub-

lic offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country.' *Providence Tool Company v. Norris,* 2 Wall. 45, 17 L. Ed. 868."

While we express no opinion on the rule as applied to the facts in that or a similar case, owing to the clash in the judgment of the courts thereon and because the facts on which it is predicated are not involved here, yet the rule thus declared is in our judgment a sound and salutary one when applied to the facts in the case at bar. The contract here, it will be noted, goes further than the contract in the case from which we have just quoted, and in some of the other cases cited. There is no claim that the plaintiff owned any building and was induced to lease it at a nominal rent on his being sustained therein by contributions of his neighbors. The contract declared on here seeks to recover for services and expenses incurred in procuring the establishment and the maintenance of the post office at a point certain, and for a long period of time. The law, recognizing the general tendency of such contracts, closes its doors to temptation by refusing to enforce them or recognize their validity.

The judgment of the lower court is accordingly affirmed.

All the Justices concur