## DAVIS v. JANEWAY et al.

No. 5233.     Opinion Filed January 11, 1916.

Rehearing Denied February 29, 1916.

(155 Pac. 241.)

CONTRACTS—Validity—Public Policy—Right to Relief. Plaintiff's grantor and defendant's assignor entered into a written contract. The object sought was to move the post office from one location to another (lot 11, block 11), and to maintain or cause it to be maintained at the latter place for five years, and to accomplish the object defendant D's assignor, M., was to use his influence and such influence as he could bring to bear upon the Department to procure the removal, and in payment therefor the plaintiff J.'s grantor, R., was to pay $5 per month for five years. A lien was given by R. on lot 14, block 11, to secure the payment. **Held:** (a) That plaintiff's petition to cancel the lien contract, showing the above state of facts, did not state a cause of action, and the court erred in overruling the demurrer thereto. (b) That the contract was void as against public policy and good morals. (c) That the plaintiff took the land incumbered with the apparent lien with full knowledge of all that had transpired, and, having

declared on the contract, was **in pari delicto** with the defendant, and it was the duty of the court to sustain the demurrer and dismiss the petition without further relief to either party.

(Syllabus by Watts, C.)

*Error from District Court, Washita County;*
*Jas. R. Tolbert, Judge.*

Action by W. H. Jacobs against B. F. Davis and W. A. McAtee, and when Jacobs died the case was revived in the names of P. A. Janeway, administrator, and W. A. McAtee, defendants in error. A general demurrer filed by defendant Davis was overruled, and he brings error. Reversed, with directions.

*A. E. Pearson,* for plaintiff in error.

*Massingale & Duff,* for defendants in error.

Opinion by WATTS, C. W. H. Jacobs, defendant in error, plaintiff below, sued B. F. Davis and W. A. McAtee in district court, Washita county. Jacobs died pending litigation, and the case has been revived in the names of P. A. Janeway, administrator, and W. A. McAtee. Defendant Davis filed a general demurrer to the petition, which was overruled. He declined to plead further, gave notice, and appeals. The petition charges:

"Comes W. H. Jacobs, the plaintiff herein, and for cause of action against said defendants states:

"That he is the owner and is in possession of lot 14 in block 11 in the town of Sentinel, in Washita county, Okla.; that said defendants claim some interest in said property adverse to this plaintiff; that as near as plaintiff is able to state the nature of their claim is as follows: That on the 19th day of August, 1910, one C. T. Reese, who was on said day the owner of said lot, and who has since conveyed the same to this plaintiff by warranty deed, entered into a contract with defendant, W. A. McAtee, said contract purporting to grant a lien upon said lot for the sum of $300, payable at the rate of $5 per month; that

said instrument was acknowledged and filed for record, and was recorded in the office of the register of deeds of Washita county, Okla., on the 10th day of September, 1910, at page 632 of Book 5 of Miscellaneous Records of said office. A copy of said instrument, with the indorsements thereon, is hereto attached, marked for identification Exhibit A, and made a part of this petition.

"That the sole and only consideration for said contract was the undertaking on the part of the said McAtee to procure the removal of the United States post office in Sentinel, Okla., from the location where it then existed to lot 11 in block 11 in Sentinel, Okla., and the further agreement that said McAtee would maintain or cause said post office to be maintained on the said lot 11 in block 11 in said town for said period of five years described in said contract. Said McAtee was to and did use influence and such influence as he could bring to bear upon the Department of the Interior of the United States to procure the removal of said post office to said location, all of which was against public policy and illegal, and said contract based upon said consideration is also void and against public policy, and is illegal and unenforceable. Defendant B. F. Davis claims to have some interest in said contract or to be the owner by assignment, and this plaintiff makes him a party to this suit in order that he may set forth such interest as he may claim and in order that the court may adjudicate and determine the validity of said contract.

"That said contract constitutes a cloud upon the title to this plaintiff's property, and should be canceled and held for naught, and plaintiff's title quieted as against the same for the reason that said contract is wholly void; that plaintiff has no adequate remedy at law."

—praying cancellation of the contract, that his title be quieted, and for costs.

Exhibit A is the written contract between McAtee and C. T. Reese, and is as follows:

"Sentinel, Oklahoma, August 1, 1910.

"Made this 1st day of August, 1910, between C. T. Reese, of the first part, and W. A. McAtee or order, party of the second part, witnesseth: That the said party of the first part agrees to pay to the said second party or order the sum of five dollars ($5.00) per month for value received beginning August 1, 1910, and continuing for five years from the date of beginning. It is further agreed and fully understood that this agreement and contract shall be a lien on the following realty in Sentinel, Washita county, Oklahoma: All of lot fourteen (14) in block eleven (11) in Sentinel, Washita county, Oklahoma. It is further agreed and fully understood that in the event the government removes the Sentinel post office from lot eleven in block eleven Sentinel, Oklahoma, that this contract shall be null and void. It is mutually agreed and understood that the covenants and agreements herein contained shall be obligatory upon our heirs, executors, administrators, and assigns of the said first party and the said second party.

"In witness whereof the first parties of the contract have hereunto set their respective hands this 19th day of August, A. D. 1910.

"C. T. Reese."

Counsel for defendants in his brief says lot 11, block 11, at the time mentioned in the petition and contract belonged to Reese, and subsequently was conveyed to defendant Davis.

The question for decision is: Does the petition state a cause of action? This proposition depends on whether: First, the contract viewed in the light of the petition is void; second, if void between the makers, are the assignee of the post office contract and grantee of lot 14, block 11, *in pari delicto*?

Comp. Laws 1909 provide:

"Sec. 1077.   *   *   *   The consideration of a contract must be lawful within the meaning of section 1123."

"Sec. 1123.   WHAT IS LAWFUL.—That is not lawful which is: 1. Contrary to an express provision of law. 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals."

In Pomeroy's Equity Jurisprudence (3d Ed.) we find:

"Sec. 935:   CONTRACTS AFFECTING PUBLIC RELATIONS. —Contracts made for the purpose of unduly controlling or affecting official conduct, or the exercise of legislative, administrative, and judicial functions, are plainly opposed to public policy. They strike at the very foundations of government, and tend to destroy that confidence in the integrity and discretion of public official action which is essential to the preservation of civilized society. The principle is universal, and is applied without any reference to the mere outward form and alleged purpose of the transaction. If a contract does unduly interfere with governmental functions, or with the relations of the citizen toward his own government in any of its departments, whether the interference be direct or indirect, such agreement is illegal, whatever form it may have assumed.   * *   *

"Contracts interfering with executive proceedings: These are subject to the same general rules which apply to similar agreements concerning legislation. All agreements, whether made with officials or with third persons, which directly or indirectly control or interfere with the due exercise of executive and administrative functions as prescribed or regulated by law, are clearly illegal."

In *Houlton v. Nichol,* 93 Wis. 393, 67 N. W. 715, 33 L. R. A. 166, 57 Am. St. Rep. 928, it is said:

"All agreements which tend to introduce personal influence and solicitation as elements in procuring and influencing legislative action or action by any department

of the government are contrary to sound morals, lead to inefficiency in the public service, and come under the condemnation of the rule here under consideration."

In 6 R. C. L., sec. 152, p. 747, it is said:

"Moreover, it has been said that any contract made for the purpose of securing the location of a public office, such as a post office, in any certain part of a city or elsewhere, or which prevents, or tends to prevent, the change or removal of such office, when the necessities of business or the interest of the public demand such change or removal, is opposed to public policy, and void, as tending to the injury of the public service, and as subordinating the public welfare to individual convenience or gain. It is true that there is some authority for the view that where it does not appear that improper means were adopted or personal influence used a contract relating to the location of a public building may be upheld notwithstanding the fact that it is susceptible of the interpretation that personal influence was to be used. But in reaching this conclusion there has evidently been a failure to take into consideration the rule approved by the weight of judicial opinion that contracts of this character are not void because of the conclusion that corruption and wrongdoing and undue influence would be the certain result thereof, but on account of the recognition of the corrupting tendencies of such contracts."

In *Elkhart County Lodge et al. v. Crary*, 98 Ind. 238, 49 Am. Rep. 746, we find a case in principle very much like the one at bar. The syllabus is as follows:

"CONTRACTS—PUBLIC POLICY—CONSTRUCTIVE FRAUD. —An owner of adjacent property entered into a combination with others and agreed with the owners of a building in a city, if they would offer their building to the government for a nominal rent, to be used as a post office for ten years, and use their personal influence and 'proper persuasion' to secure its acceptance, the former would, in

case of success, pay the latter a certain sum annually for
ten years. The location was chosen and leased accordingly,
one of the owners of the building, who was a personal
friend of the Postmaster General, having truthfully repre-
sented to him that the location was suitable, and their
notes were given for the annual installments. Held, that
the consideration of the notes was illegal; the agreement
being against public policy, and therefore void."

In commenting upon the moral tendency of such a
contract, the court said:

"The material deduction of fact from these subsidiary
facts is that the parties formed a combination for the pur-
pose of securing the location of a public office, and as part
of the plan the appellants undertook that certain individ-
uals of their number should use their influence with the
government officers to effect the purpose of the combina-
tion, and that the agreement to pay for such services was
contingent upon the success of the scheme. It has long
been established that a contract against public policy will
not be enforced. This principle is firmly fixed and has
often been applied to contracts. There can therefore be
no doubt as to the existence of the rule. The only ques-
tion is as to its applicability to the facts of this case.
Where the general public has an interest in the location of
an office, a railroad station, or the like, a contract to secure
its location at a particular place is held to be against pub-
lic policy, and not enforceable. * * *

"There are many phases of injury to the public serv-
ice, and we do not deem it necessary to examine the cases
upon the subject; for we think it quite clear that a con-
tract which is made for the purpose of securing the loca-
tion of an important office connected with the public serv-
ice for individual benefit, rather than for the public good,
tends to the injury of the public service. The case made
by the evidence falls fully within the principle that con-
tracts which tend to improperly influence those engaged
in the public service, or which tend to subordinate the

public welfare to individual gain, are not enforceable in any court of justice. Pollock, Prin. of Cont. 279; Anson Cont. 175; 1 Whart. Cont. secs. 402 to 414, inclusive. A wholesome rule of law is that parties should not be permitted to make contracts which are likely to set private interests in opposition to public duty or to the public welfare.  *   *   *

"It is not necessary that actual fraud should be shown; for a contract which tends to the injury of the public service is void, although the parties entered into it honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was, in fact, done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit. An English author says: 'But an agreement which has an apparent tendency that way, though an intention to use unlawful means be not admitted, or even be nominally disclaimed, will equally be held void.' Pollock's Principles of Contracts, 286. In the case of *Tool Co. v. Norris, supra* [2 Wall. 45, 17 L. Ed. 868], the court said: 'All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country.'  *   *   *

"The contract before us has two infirmities—one of an agreement for the use of personal influence; and another of an agreement for compensation dependent upon the contingency of success. That we are correct in saying

that the agreement is dependent upon a contingency is shown by the fact that the consideration became payable only in the event that the post office was located and maintained in appellant's building."

We have quoted extensively from the above case, because, in our mind, the contract as reflected by the allegations in the petition brings it clearly within the rule therein announced and it answers most all of the contentions made by counsel.

In the case at bar the object sought was to move the post office from one location to another (lot 11, block 11), and to maintain or cause it to be maintained at the latter place for five years, and to accomplish the object defendant Davis' assignor, McAtee, was to use his influence and such influence as he could bring to bear upon the Department to procure the removal, and in payment therefor Jacob's grantor, Reese, was to pay $5 per month for five years, with provision that, if the government removed the post office from the place last mentioned, the contract was to become null and void.

We think the cases very analogous. In the former, one was to tender his building for a nominal rent for ten years and use "personal influence" and "proper persuasion" to secure an acceptance, and in the case of success the other was to pay $5 per month for the term of years. In the latter, one was to procure the removal of and maintain in his own building and use "his own influence" and such "influence" as he could bring to bear upon the Department to procure the removal, and in the event of success the other was to pay $5 per month for five years. It seems to us for all practical intention and purpose the contracts are substantially the same. This class of contracts we think void as against public policy and good morals. The

original parties may not have intended to do any wrong,. and the removal of the post office, no doubt, was financially a benefit to them, but a great injustice may have been perpetrated on the public and the administrative department of the government; but in such cases one has no right to exchange his "personal influence," etc., for a consideration, and agree to do or have done a thing in which the administrative welfare of the public is concerned, and, when. the *quid pro quo* is thus, a court of equity will not pause to inquire. *Spence v. Harvey et al.*, 22 Cal. 337, 83 Am. Dec. 69. The law frowns on such dealings, because public interest is not a subject of barter and sale, and, as the law views it, it is better to shun not only evil, but the very appearance of evil. We do not mean, however, to hold that in no instance can a valid contract be made compensating one by contribution or other valid consideration for the use of his property when let to the Post Office Department for a minimum rent, but where, like the case at bar, the trick is by "influence," etc., the court will supply that which is left for inference and hold the contract invalid.

In *Hare v. Phaup*, 23 Okla. 575, 101 Pac. 1050, 138. Am. St. Rep. 852, Dunn, J., distinguished the cases cited therein as well as herein, *Fearnley v. De Mainville et al.*, 5. Colo. App. 441, 39 Pac. 73, and *Bryan v. Dyer*, 28 Ill. 188, and discussed and refused to follow *Beal et al. v.. Polhemus*, 67 Mich. 130, 34 N. W. 532.

In *Edwards v. City of Goldsboro*, 141 N. C. 60, 53. S. E. 652, 4 L. R. A. (N. S.). 589, note, 8 Ann. Cas. 479,. most of the cases cited herein and many others are collated and classified, and for the sake of brevity reference is made thereto.

2. Having held that the contract was void between the makers, it follows that such invalidity continues in the hands of the assignee. But counsel for defendant says: Are the assignee of the postoffice contract and the grantee of lot 14 in block 11 *in pari delicto?* In this case, yes. Plaintiff took the land incumbered with the apparent lien and in accordance with the allegations of his petition with full knowledge of all that had transpired, and is therefore a privy in this sense. Besides, he declared in his petition on the contract. If a court of equity in such instances could relieve plaintiff, it could as easily relieve his vendor. Unless the impurity of the contract contaminates all who declare and take under it, the purpose of the law fails, and in such instances one *in pari delicto* could one minute transgress the law with impunity, and in the next convey his property and be forgiven, a complete ruse whereby a court of equity would punish one and help the other. Under the state of pleadings and facts we think the sins of Reese were visited on Jacobs. Neither party was entitled to relief.

In 9 Cyc. 546, it is said:

"No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxims: '*Ex dolo malo non oritur actio,*' and, '*In pari delicto potior est conditio defendentis.*' The law, in short, will not aid either party to an illegal agreement; it leaves the parties where it finds them. Therefore neither a court of law nor a court of equity will aid the one in enforcing it, or give damages for a breach of it, or set it aside at the suit of the other, or, when the agreement has been executed in whole or in part by the payment of money or the transfer of other property, lend its aid to recover it back. * * *"

See, also, *Edwards et al. v. Boyle,* 37 Okla. 639, 133 Pac. 233.

In *Garrison v. Burns,* 98 Ga. 762, 26 S. E. 471:

"It has been held that it makes no difference whether the illegality of the transaction is made to appear by the plaintiff or by the defendant. See *Howell v. Fountain,* 3 Ga. 182 (46 Am. Dec. 415), where the following language of Lord Mansfield, in *Holman v. Johnson,* Cowp. 343, is approved as a correct expression of the law on this subject: 'If from the plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa,* or from the transgression of a positive law of this country, then the court says he has no right to be assisted.' In this connection consult, also, *Bugg v. Towner,* 41 Ga. 318; *Heineman v. Newman,* 55 Ga. 262 (21 Am. Rep. 279; *Tompkins v. Compton,* 93 Ga. 525, 21 S. E. 79. It would seem that the general rule deducible from all the authorities is as stated in Clark, Cont. 491, viz: 'That the court will not lend its aid to a party who, as the ground of his claim, must disclose an illegal transaction.' We understand this to mean that, whenever either party has to rely upon a contract which is, in fact, illegal, the other party may, in avoidance of it, show its illegality. The plaintiff in the present case does not, it is true, rely on the contract. On the contrary, he seeks to rescind it. But he had to bring it to light, and in making out his case disclose its real nature; and, as it was an executed contract, this gave the defendant the right to invoke the rule that the court should leave them where it found them."

We are of the opinion that the trial court erred in overruling defendant's demurrer, and should have sustained same, dismissed the petition, and denied further relief to either party. We therefore recommend that the judgment of the trial court be reversed, and that it be directed to sustain the demurrer and dismiss the petition.

By the Court: It is so ordered.