## WHITAKER v. FIRST NAT. BANK OF SAPULPA.

No. 6298. Opinion Filed March 7, 1916.

(155 Pac. 1175.)

CONTRACTS—Validity—Location of Post Office—Public Policy. A contract contemplating the establishment and maintenance of a post office at a certain place for the private advantage of the signers thereof, as contradistinguished from the interest of the general public, and providing that certain payments should be made contingent upon the accomplishment of such purpose, is contrary to the public policy of this state and void.

(Syllabus by Bleakmore, C.)

Error From District Court, Creek County; Chas. B. Wilson, Assigned Judge.

Action by First National Bank of Sapulpa, Okla., a corporation, against Chas. Whitaker. Judgment for plaintiff, and defendant brings error. Reversed, with directions to dismiss.

*Burke & Harrison,* for plaintiff in error.

*Frank P. Smith,* for defendant in error.

Opinion by BLEAKMORE, C.   This case presents error from the district court of Creek county. The First National Bank of Sapulpa sued Charles Whitaker for breach of the following contract:

"This agreement witnesseth that, in consideration that the First National Bank of Sapulpa, Indian Territory, shall make a bid and offer to furnish to the government of the United States a suitable building for the use of the post office at Sapulpa, Indian Territory, on the following described tract of land in the said city of Sapulpa, in said territory, to wit, the rear seventy feet of lot 11, block 22, and the five feet of the next lot adjoining it on the north, described as a strip five feet wide and 70 feet long, commencing at the rear of said lot 10, block 22, for a period of ten years at a rental of one dollar ($1.00) per year; and in further consideration of the benefits to accrue to the undersigned by reason of the location of said post office at said site, we, the undersigned, do hereby agree to make up and pay to the said First National Bank of Sapulpa, Indian Territory, a bonus of twelve hundred dollars ($1,-200.00) in cash, and the further sum of forty dollars ($40) per month for and during the term which the said post office shall be so located under said rental, said bonus to be due when the location is selected by the United States postal department, and the said forty dollars ($40) per month to be due and payable monthly in advance beginning with the location of said post office, and to continue monthly during the occupancy of said building as a post office for ten years, and, if not so occupied for ten years, we agree to pay the same as long as said building is occupied as a post office, not exceeding ten years.

"It is further mutually agreed between the subscribers hereto that said bonus and said rental shall be paid in proportion to our several subscriptions set opposite our respective names and appended hereto.

"In witness whereof we have hereunto subscribed our respective names with the respective amounts of bonus and annual rental set opposite our respective names this 4th day of June, 1907.

| Names. | Bonus. | Annual Rental. |
|---|---|---|
| Chas. Whitaker | $150.00 | $60.00 |
| P. B. France | 100.00 | 60.00 |
| James S. McAllister | 150.00 | 60.00 |
| James F. Fuller | 150.00 | 60.00 |
| Geo. W. Ripley | 150.00 | 60.00 |
| Missouri Building Co., by Geo. W. Ripley, Pres | 150.00 | 60.00 |
| J. G. Menifee | 150.00 | 60.00 |
| Plater Bros., by C. A. Plater | 150.00 | 60.00 |
| Chas. Whitaker, J. S. McAllister, J. F. Fuller | 50.00 | 60.00" |

The evidence disclosed that Whitaker was at the date thereof engaged in business in the immediate vicinity of the proposed site of such post office, that the bonus provided for in the contract had been received by the bank, and that Whitaker had paid his proportionate share of the rentals in compliance with the terms thereof until January, 1911, after which he refused to make further payments.

The only question necessary to be determined in this proceeding is the validity of the contract. It is obvious that said contract contemplated that the bank should procure the establishment and maintenance of the post office at a certain place, for the private advantage of the signers thereof, as contradistinguished from the interest of the general public, and that the payments provided for were contingent upon the accomplishment of this purpose. Contracts of this character are denounced, and their enforcement denied by the courts, not alone on account of the evil necessarily flowing from a particular agreement, but from an almost universal recognition of the general corrupting tendency of such practices.

While in a number of jurisdictions, notably Colorado, Illinois, and Michigan, contracts similar to the one under consideration have been held not to impinge upon the principles of public policy there accepted, yet this court, upon reviewing the decisions from those states, has refused to recognize them as authority. In *Hare v. Phaup,* 23 Okla. 575, 101 Pac. 1050, 138 Am. St. Rep. 852, it is held:

"A contract providing for the payment for services and expenses incurred in procuring the establishment of a post office in a city in and upon a certain block therein, the payments thereunder to continue so long as said post office shall be there maintained, not to exceed ten years, is contrary to public policy and void."

The recent case of *Davis v. Janeway, Admr.,* 55 Okla. 725, 155 Pac. 241, involved the construction of a contract containing the provision that:

"It is further agreed and fully understood that in the event the government removes the Sentinel post office from lot 11 in block 11, Sentinel, Oklahoma, that this contract shall be null and void."

It was there held, after a liberal citation and review of the authorities, that such contract was void as against public policy.

Following the doctrine announced in these cases from our own court, it must be held that the contract in question is violative of our established public policy, and therefore void. Such being the case, the courts of this state will not lend their aid to its enforcement.

The judgment should be reversed with direction to the trial court to dismiss the action.

By the Court: It is so ordered.