## DAVIS *et al.* v. BOARD OF COM'RS OF CHOCTAW COUNTY.

No. 4796.   Opinion Filed April 11, 1916.

Rehearing Denied June 20, 1916.

(158 Pac. 294.)

1.   **PLEADING—Exhibits—Effect.**   Where suit is brought on an instrument in writing, for the payment of money, and a copy of such instrument is attached to the petition and made a part thereof, such copy should be considered as a part of the petition when construing the allegations thereof on demurrer.

2.   **CONTRACTS—Validity—Public Policy.**   The county commissioners of C. county accepted from D., H., and T. their bond, conditioned that, if the courthouse about to be erected in said county should be located on a certain block in the county seat, they would pay the county the excess cost thereof over and above $8,000, but not to exceed the penal sum of $15,000. The commissioners, relying thereon, acquired title to said block by purchase and condemnation proceedings at a total cost of $10,391.05, and thereupon instituted action against the makers of said bond to recover $2,391.05, the amount alleged to be due thereon. **Held,** that the bond was a valid obligation and not violative of public policy, there being no charge that the commissioners were improperly influenced, or that the public welfare was made subordinate to personal considerations or private gain, or that the location was made in disregard of the public interests.

(Syllabus by the Court.)

*Error from District Court, Choctaw County;*
*A. H. Ferguson, Judge.*

Action by the Board of County Commissioners of Choctaw County against J. W. Davis and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Cocke & Willis,* for plaintiffs in error.

*Thos. S. Hardison* and *M. W. Gross,* for defendant in error.

SHARP, J. By the terms of a bond made August 12, 1911, J. W. Davis, J. S. Hastings, and C. A. Thompson became obligated and bound unto Choctaw county in the penal sum of $15,000, conditioned as follows: That, in consideration of the board of county commissioners of Choctaw county locating the courthouse of said county in block 95 in the city of Hugo, the said obligors "agreed to deliver title to said board of county commissioners," to said block for a sum not exceeding $8,000, conditioned that the proper authorities would take all necessary action for the acquirement of title to said block by condemnation proceedings or otherwise, and, in the event said board of county commissioners was required to pay a larger sum than $8,000 to obtain such title, then and in that event the said obligors would pay the excess over and above said sum of $8,000, with costs. On the 27th day of August, 1912, suit was instituted to recover of the obligors on said bond the sum of $2,391.05, alleged to be due the plaintiff by the makers on account of a breach of the conditions of said bond. The petition charged the due execution of the bond, the purpose of which, it was said, was to insure the construction of the courthouse on block 95 of the city of Hugo, and the giving of which caused and induced the county commissioners of said county to locate and build the county courthouse on said block. It was further charged that two of the makers of said bond owned real estate near said courthouse, which, by reason of the near-by location of the courthouse, was greatly increased in value, and that it was on this account that said property owners caused and procured said bond to be given. The petition sets forth the difficulty had in procuring by condemnation proceedings the north one-half of said block, at a total cost, it appears, of $7,131.05, and charges that on

account of the execution of said bond the makers thereof became and were liable thereon in the sum of $2,391.05, being the excess over and above the maximum cost of said block, as provided in the bond. To the petition defendants filed a general demurrer, which was overruled by the court, and, said defendants electing to stand on their demurrer, judgment was rendered for the plaintiff.

The petition is loosely drawn. Had a motion to make more definite and certain been filed by defendants, it should have been sustained. Aided, however, by the bond upon which the action was based, and a copy of which was attached, marked as an exhibit and made a part of the petition, the petition is sufficient as against a general demurrer, according to the rule heretofore announced in *Grimes v. Cullison,* 3 Okla. 268, 41 Pac. 355; *Whiteacre v. Nichols,* 17 Okla. 387, 87 Pac. 865; *Long v. Shepard,* 35 Okla. 489, 130 Pac. 131.

The remaining question is: Was the bond void as being against public policy? There is no charge of the receipt of a personal consideration by any public official connected with the transaction, or that the acceptance of the bond tended to improperly influence the commissioners in the performance of their public duties, or to induce them to subordinate the public welfare to individual gain. So far as disclosed by the petition, the action of the public officials having to do with the location of the courthouse was wholly free from any influence, except their judgment of the suitableness of the location and the guaranty of cost offered by the makers of the bond. It is not charged that as a matter of fact the location of the courthouse was improperly made or made in disregard of public interest. From the fact that the giving of the bond influenced the action of the board of county commissioners

in locating the courthouse, it does not follow that the public interests were not subserved, or that the taxpayers of the county were not the beneficiaries of the transaction. Ordinarily, a more suitable and better site could be procured with the larger means, incurred and paid out on account of the bond, than with a lesser sum. Speaking generally, it is usually necessary, in deciding upon the propriety of a public improvement, to consider, on the one hand, the advantages which are likely to accrue to the public from it, and, on the other hand, the expense and burden which would be imposed by reason of it. These considerations lie at the root of the question whether it shall be done, and, if done, how it shall be done. Where the amount of expense is so great that the undertaking is abandoned, a public gain is lost by reason of the obstacle presented. If the expense can in any way be reduced, so that the balance, after weighing these counter considerations, is in favor of the benefit from the burdens, then the public reaps the advantage. The propriety of the location of public buildings may depend, in some measure, upon the sum proposed to be given by the property owners of the vicinity. The public interest obviously requires that such location should be made with a view to all the circumstances, and the greater or less burden to the affected taxpayers would be an important circumstance to be taken into consideration in determining between different sites, in other respects equally suitable. Public policy does not require that those who are benefited by an increase in the value of their property located in the vicinity of public buildings may not be permitted to contribute some part of the increase for the purpose of erecting such buildings, rather than that the whole of such advantage should accrue to them, and the expense be wholly borne by the taxpayers generally. It is not every

influence upon official action that is against public policy. It is only that which is immoral in its inception, or tends to impair official integrity, or otherwise contravenes the established interests of society.

In support of these views may be cited the following authorities: *Thompson v. Board of Supervisors*, 40 Ill. 379; *Island County v. Babcock*, 17 Wash. 438, 50 Pac. 54; *Wells v. Taylor*, 5 Mont. 205, 3 Pac. 255; *Dishon v. Smith*, 10 Iowa, 212; *Meddis v. Board of Park Commissioners*, 42 S. W. 98, 19 Ky. Law Rep. 817; *State of New Jersey v. Mayor of Orange*, 54 N. J. Law, 111, 22 Atl. 1004, 14 L. R. A. 62; *Fearnley v. DeMainville*, 5 Colo. App. 441, 39 Pac. 73; *Pepin County v. Prindle*, 61 Wis. 301-311, 21 N. W. 254; *Beal v. Polhemus*, 67 Mich. 130, 34 N. W. 532; *State Treasurer v. Cross*, 9 Vt. 289, 31 Am. Dec. 626; *Odineal v. Barry*, 24 Miss. 9; *State v. Johnson, Adm'r*, 52 Ind. 197; *School District of Kansas City v. Sheidley*, 138 Mo. 672, 40 S. W. 656, 37 L. R. A. 406, 60 Am. St. Rep. 576; *Electric Plaster Co. v. Blue Rapids Township*, 77 Kan. 580, 96 Pac. 68; *Commissioners of the Canal Fund v. Perry*, 5 Ohio, 56; *George v. Harris*, 4 N. H. 533, 17 Am. Dec. 446; *Bull v. Talcot*, 2 Root (Conn.) 119, 1 Am. Dec. 62; *Marsh v. Chamberlain*, 2 Lans. (N. Y.) 287.

In *Currier et al. v. United States*, 184 Fed. 700, 106 C. C. A. 654, the plaintiffs in error, who were the owners of property in Greely, Colo., which was selected as a site for the postoffice, sought to defeat the condemnation proceedings, instituted by the government to acquire it, because the Secretary of the Treasury was induced to choose that particular location by an agreement of owners of neighboring property to pay the cost thereof in excess of the sum appropriated by Congress. The act au-

thorized the Secretary to acquire a suitable site by purchase, condemnation, or otherwise, within the limit of $15,000. The award in condemnation proceedings exceeded $32,000. The restriction imposed by the act of Congress was in the amount of public funds that could be used for the postoffice building. The objection was that it was against public policy for private citizens to make donations under such circumstances, and the fact that they did so invalidated the proceedings of the government. Judge Hook said in the opinion, concurred in by Justices Van Devanter and Carland (the former now a member of the Supreme Court of the United States):

"There is no charge of the receipt of a personal consideration by any representative of the government connected with the transaction, and for that reason most of the cases cited for plaintiffs in error are inapplicable. The action of the Secretary was wholly free from any influence, save his judgment of the suitableness of the location and the donations towards its cost. Those donations were to the government, the public itself, not to an official, and we perceive nothing in them that would tend to public detriment. Even if they influenced him, it does not follow the public interest was not subserved. All reasonable inferences are to the contrary. Obviously, a site at least as suitable and convenient could be procured with the larger means as with the smaller, and in all reasonable probability a better one, notwithstanding any claim to the contrary."

After stating that any agreement to pay a corporation or its agents a premium for doing their duty, or a contract which restrains or controls the judgment of public officials, is invalid, it is further said by Judge Dillon, in discussing the question of public policy:

"But a promise by individuals to pay a portion of the expense of public improvements does not necessarily

fall within this principle, and such a promise is not void as being against public policy; and, if the promisors have a peculiar and local interest in the improvement, their promise is not void for want of consideration, and may be enforced against them." (1 Dillon on Mun. Corp. [4th Ed.] sec. 458.)

Contracts between public officials and private parties which subordinate the public welfare to personal benefit, or which are against the public good, are open to attack; but, where they involve nothing inconsistent with good morals and sound policy, no good reason is seen why they may not be made— not, at least, in cases such as that at bar. It is not uncommon for individuals peculiarly benefited to unite with municipalities in making public improvements, building highways, digging drains and ditches, building bridges, and providing sites for schoolhouses and other public buildings. Many public institutions in this state have been located as the result, partly at least, of local donations. See the acts of the Legislature locating the state reformatory at Granite; the Eastern Hospital for Insane at Vinita; the Industrial School for Girls at Chickasha. In fact, the seat of government and the per-- manent capitol of the state was located in Oklahoma City as the result of a free site for the capitol building and executive mansion, certain cash donations, and 650 acres of land (including site for capitol and executive mansion). Sess. Laws 1913, p. 264. From these and other acts of the Legislature, it is clear that the county commissioners of Choctaw county, in accepting from the plaintiffs in error their bond that the total cost of the site for the courthouse should not exceed $8,000, and that, if it did, the obligors on said bond would pay such excess not to exceed $15,000, violated no rule of public policy; but that the bond taken by them, and on account of which they

were induced to act, is a valid, enforceable obligation, which cannot be repudiated by its makers.

The opinions of this court in *Baumhoff v. Oklahoma City Gas & Elec. Co.*, 14 Okla. 127, 77 Pac. 40, *Hare v. Phaup*, 23 Okla. 575, 101 Pac. 1051, 138 Am. St. Rep. 852, and *Molacek v. White*, 31 Okla. 693, 122 Pac. 523, are not in conflict with the rule which we have announced, as a careful examination of the questions decided in those cases will disclose.

For the reasons stated, the judgment of the trial court is affirmed.

All the Justices concur.