## RIEDT v. PLATT.
## SAME v. WIENEKE.

Nos. 13359 and 13360. Consolidated—

Opinion Filed May 20, 1924.

Rehearing Denied Sept. 16, 1924.

**Contracts—Validity—Public Policy — Location of Post Office.**

Where a number of persons entered into a contract with another, wherein it was

agreed that if he would submit a bid to the Post Office Department to lease a building on a particular lot, properly equipped with the necessary post-office fixtures and that if such bid should be accepted, he would build, equip, and lease the building to the government for post-office purposes, they would each pay his contributive share for the purchase of the equipment and also rental as long as the same should be occupied as a post office, not to exceed 10 years, and where it appears from the contract that it was not in contemplation of the parties that he should exercise any influence or perform any service to secure such location other than submitting a bid and building and equipping the building, such contract was not void as being against public policy, but is an enforceable contract.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from County Court, Pittsburg County; S. F. Brown, Judge.

Actions by G. A. Riedt against E. J. Platt and by G. A. Riedt against L. F. Wieneke, consolidated. Judgment for defendants, and plaintiff appeals. Reversed, with directions.

Guy L. Andrews, for plaintiff in error.

Counts & Counts and Hulsey, Null & Hulsey, for defendants in error.

Opinion by RAY, C. The two cases, involving the same question of law, have, by agreement of the parties, been consolidated. In No. 13359, the demurrer was sustained to the second amended petition, and in No. 13360 the court directed a verdict for the defendants. The action of the trial court in each case was based on the ground that the contract sued on was void, as against public policy, and that is the only question presented here. The contract sued on is as follows:

"Agreement.

"This instrument made and entered into this 16th day of February, 1917, by and between G. A. Riedt of Hartshorne, Oklahoma, as party of the first part, and J. B. Reynolds and A. E. McNeill, as partners, doing business under the firm name and style of Reynolds-McNeill, H. T. Jeffers, Frank Savage, and Will Anderson, L. Rothbaum, C. W. Powell, F. B. Pitchford, L. F. Wieneke, First State Bank of Hartshorne by B. C. Simms, V. P. and E. J. Platte, James Katigan and M. B. Epstein, all of Hartshorne, Oklahoma, as parties of the second part:

"Witnesseth: That, Whereas, it will be to the benefit of all parties to this agreement to have the post-office of the city of Hartshorne, Pittsburg county, Oklahoma, located on Lot number nineteen (19), of block seventy-nine (79) of the city of Hartshorne, and

"Whereas, Further, In order to obtain the location of said post office at said block it is necessary to erect a suitable building thereon and to enter into an agreement with the Postmaster General for the United States of America, wherein it will be required that the lessor agree to furnish, in addition to a suitable building, the postal fixtures, water, lights and fuel for a term and period of ten (10) years, and,

"Whereas, It will be necessary to erect such a building and to purchase or rent, or otherwise procure, such fixtures as the contract specifications and requirements of the Postmaster General of the United States may demand, and,

"Whereas, Further, for the purpose of inducing the said G. A. Riedt, party of the first part herein, to submit a bid to the Postmaster General and to erect a building upon the property afore described, and that there be procured the necessary furniture, fixtures and paraphernalia used in and about such offices:

"Therefore, This Indenture, Witnesseth: That the party of the first part agree to erect upon lot number nineteen (19) of block seventy-nine (79) of Hartshorne, Pittsburg county, Oklahoma, such building as will meet the needs and requirements of the Postmaster General of the United States of America in the contract that the said G. A. Riedt will be required to enter into with the Postmaster General.

"The parties hereto agree, jointly and severally, to bear, share, and share alike the expense necessary to equip that portion of the building used by the United States government as a post office, in event such bid shall have been accepted and the post office shall be located upon lot number nineteen (19) of block seventy-nine (79), aforesaid, and to thereafter bear the expense, share and share alike, of the maintenance of such fixtures and equipment, so far as the same shall be required to be done by virtue of the contract that may hereinafter be entered into by the said G. A. Riedt with the Postmaster General of the United States of America, and upon the signing of such contract the terms and provisions thereof so far as they relate to the covenants and agreements herein contained, shall become a part of this agreement as though written herein and attached hereto prior to the delivery hereof. The said parties of the second part further agree during the life and term of the contract hereafter to be entered into if said post office shall by virtue of such agreement be located upon lot number nineteen (19) of block seventy-nine (79) (hereinafore-mentioned) and the said G. R. Reidt shall build such building as will meet the demands of the Postmaster General of the United States, to pay to the said G. A. Riedt, his heirs, or assigns, for

that portion of such building as may be used for post office purposes, the sum of twenty dollars ($20) for each and every month during the term of lease set forth in the contract hereinafter to be entered into by the said G. A. Reidt and the said Postmaster General of the United States; not longer, however, than ten years (10) from the date upon which said contract becomes effective.

"It is further agreed that this contract shall be binding upon the heirs, executors, administrators and assigns of the parties hereto.

"In Testimony Whereof, We Have Hereunto set our hands on the date in this instrument first set forth and appearing."

The essential parts of the petition are that pursuant to the contract the building was constructed and the fixtures installed, and that plaintiff entered into a contract with the United States by the terms of which the building and fixtures were leased for a post office building for a period of 10 years. A copy of the contract with the government was made a part of the petition. The contract with the government provided for the leasing of the building and the fixtures for a period of 10 years from the 1st day of June, 1917, for an annual rental of $240, provided that Congress should make the necessary appropriation therefor from year to year, or authorize payment of such rental. It also provided that the plaintiff should keep the building and fixtures in good repair and furnish heat and light to the satisfaction of the government, and that if the building became unfit for use as a post office the lease might be terminated at the option of the Postmaster General on one day's notice, and should terminate when the post-office could be moved into a government building, or when in the discretion of the Postmaster General the postal service required it, on giving three months' notice thereof.

A number of text books and decisions of other states are cited in the briefs, but we think the public policy of this state has been declared in the decisions of this court, and it is not necessary to consider the decisions of other states.

The plaintiff relies upon Davis et al. v. Board of Com'rs of Choctaw County, 58 Okla. 77, 158 Pac. 294, and Cherry v. City State Bank et al., 59 Okla. 267, 159 Pac. 253. The defendant cites and relies upon Enid Right of Way and Townsite Co. v. Lile, 15 Okla. 317, 82 Pac. 810; McGuffin v. Coyle & Guss, 16 Okla. 648, 85 Pac. 954; 86 Pac. 962; Hare v. Phaup, 23 Okla. 575, 101 Pac. 1050; Davis v. Janeway, 55 Okla.

725, 155 Pac. 241; Whittaker v. First National Bank of Sapulpa, 56 Okla. 270, 155 Pac. 1175. We will consider first those cases in which the contract has been held to be void, beginning with the Enid Right of Way and Townsite Co. v. Lile. In that case Lile, defendant, had entered into a contract with the Enid Right of Way and Townsite Company which provided that in consideration of the location of the depot of the Denver, Enid & Gulf Railway at a certain place he would pay to the townsite company the sum of $75. Following is the syllabus in that case:

"1. A railroad company is a quasi public corporation, and the public has an interest in the location of its stations and depots. An agreement which tends to influence or lead persons charged with the performance of the duty of locating such railroad stations or depots, is an agreement to influence the discharge of a trust to the public, intended by law for the benefit of the people, and any agreement which tends to influence, restrict, or limit that power for a pecuniary consideration, running to such company or its agents, or persons supposed to have an influence with such company will be void as against public policy, and not enforceable by the courts.

"2. Public policy requires that a railroad company chartered by the authority of the Territory, should not be permitted to limit these franchises by contract which will place it in a position where it is not free to act in the location of its railroad stations and depot at such points as the public convenience may require. And a contract which provides that for a consideration the location of a railroad station or depot by the railroad corporation shall be at a certain point, without regard to the question of the needs of the people, or the public convenience, is against public policy."

In McGuffin v. Coyle and Guss, McGuffin had executed a note to Coyle and Guss to be paid if the Santa Fe Ry. should be built to Cushing by July 1, 1902. Guss was a stockholder and director in the construction company. It was held in that case that the note being executed to Coyle and Guss was for their benefit and void. After reviewing the authorities, Irwin, J., in the body of the opinion said:

"It is argued by counsel for the defendant in error that as in this case there is no evidence to show that the public interests are to be in any way injured, that for this reason the contract should not be declared void, but we think this contention is fully answered in the cases above cited, where almost universally the authorities lay down the rule that it is not necessary that affirmative proof should be made that some public interest is being injured, but the mere fact that the contract by its

terms, and in its effect would tend to produce that result, and would be offering an improper inducement for the exercise of discretion which should be honestly and faithfully exercised with a view to the protection of public and private interests, and should not be hampered by any consideration of personal pecuniary gain. It is not, as the authorities say, so much what the effect actually is, as' what it is likely to be, and what the tendency of such contracts would be, that the policy of the courts is to remove from all cases where the parties are called upon to exercise discretion involving public and private interests the element of temptation to improper action occasioned by pecuniary and mercenary motives."

In Hare v. Phaup, Hare sought to recover on a contract wherein Phaup, in consideration of services rendered and expenses incurred by Hare in procuring the establishment of the post office at Tecumseh upon a certain lot, had agreed to pay $5 per month so long as the post office should be maintained on that lot, and not to exceed 10 years. That contract was held void. The syllabus is as follows:

"A contract providing for the payment for services and expenses incurred in procuring the establishment of a post office in a city in and upon a certain block therein, the payments thereunder to continue so long as said post office shall be there maintained, not to exceed ten years, is contrary to public policy and void."

In Davis v. Janeway, it was said in the syllabus:

"Plaintiff's grantor and defendant's assignor entered into a written contract. The object sought was to move the post office from one location to another (lot 11, block 11), and to maintain or cause it to be maintained at the latter place for five years, and to accomplish the object defendant D.'s assignor, M., was to use his influence and such influence as he could bring to bear upon the Department to procure the removal, and in payment therefor the plaintiff J.'s grantor, R., was to pay $5 per month for five years. A lien was given by R. on lot 14, block 11, to secure the payment. Held: (a) That plaintiff's petition to cancel the lien contract, showing the above state of facts, did not state a cause of action, and the court erred in overruling the demurrer thereto. (b) That the contract was void as against public policy and good morals."

All 'the foregoing cases are clearly distinguishable from the instant case. They are based upon the proposition that services performed, influence exerted, or renumeration received to induce those engaged in public service to do something for gain or detrimental to the public service render the contract void. It is upon the theory that it tends to improperly influence those engaged in a public service and to subordinate the public welfare to individual convenience or gain. The distinction is clearly made by Justice Dunn in Hare v. Phaup, supra, wherein he said:

"* * * Counsel for plaintiff argues in support of the contract that one person or many who might own a building or secure the right to the possession thereof by renting the same from its owner may lawfully let the same to the government of the United States for post office purposes at a nominal rent and a contract of contribution between the original parties be valid, and argues from this conceded proposition, that which in our judgment does not follow, to wit, that a contract such as the one before us providing for payment of services and expenses incurred in procuring the establishment and the maintenance of a post office at a certain point or place in the city, which contract shall continue for a period of ten years, would likewise be valid."

The case of Whitaker v. First Nat. Bank of Sapulpa, supra, is not so clearly distinguishable. In that case a contract not altogether dissimilar to that of the instant case was held void. In that case, Whitaker, with others, in consideration that the First National Bank of Sapulpa should build and offer to furnish to the government a suitable building for use as a post office on a certain described lot, and "in further consideration of benefits to accrue to the undersigned by reason of the location of the said post office at said site we do hereby agree to make and pay to the said First National Bank of Sapulpa a bonus of $1,-200 in cash and the further sum of $40 per month for and during the term which the said post office shall be so located under said rental, said bonus to be due when the location is selected by the United States Postal Department and the said $40 per month be due and payable in advance beginning with the location of said post office and to continue monthly during the occupancy of said building as a post office for 10 years and if not so occupied for 10 years we agree to pay the same as long as said building is occupied as a post office not exceeding 10 years." The court then said that it was obvious that the contract contemplated that the bank should procure the establishment and maintenance of the post office at a certain place for private advantage of the signers as contradistinguished from the interest of the general public, and that the payments provided for were contingent upon the accomplishment of this purpose. The writer of the opinion then cited Hare v. Phaup and Davis v.

Janeway, and quoted from those cases wherein it was held that where the contract provided for the payment of services and expenses incurred in procuring the establishment of a post office upon a certain block, the payments thereunder to continue so long as the post office should be maintained; the contract was void. The case turned upon the theory that the contract provided for the payment of services in securing and holding the post office at that particular point. While the opinion was based upon that theory, it is not clear from the contract quoted in the opinion, that personal services or influence was the consideration upon which the contributions were placed.

We will now consider the cases where the contract was rejected. In Davis et al. v. Board of Commissioners of Choctaw County, supra, Justice Sharp, after reviewing all of the foregoing cases with the exception of Whitaker v. First National Bank of Sapulpa, held valid a contract by which certain persons had agreed with the board of county commissioners of Choctaw county that if they would locate the courthouse on a certain block of the county seat they would pay the county the excess cost thereof over and above $8,000, but not to exceed the sum of $15,000. The court said:

"Contracts between public officials and private parties which subordinate the public welfare to personal benefit, or which are against the public good, are open to attack; but, where they involve nothing inconsistent with good morals and sound policy, no good reason is seen why they may not be made—not, at least, in cases such as that at bar. It is not uncommon for individuals peculiarly benefited to unite with municipalities in making public improvements, building highways, digging drains and ditches, building bridges, and providing sites for schoolhouses and other public buildings. Many public institutions in this state have been located as the result, partly at least, of local donations. See the acts of the Legislature locating the State Reformatory at Granite; the Eastern Hospital for Insane at Vinita; the Industrial School for Girls at Chickasha. In fact, the seat of government and the permanent capitol of the state was located in Oklahoma City as the result of a free site for the Capitol building and executive mansion, certain cash donations, and 650 acres of land (including site for Capitol and executive mansion). Sess. Laws 1913, p. 264. From these and other acts of the Legislature, it is clear that the county commissioners of Choctaw county, in accepting from the plaintiffs in error their bond that the total cost of the site for the courthouse should not exceed $8,000, and that, if it did, the obligors on said bond would pay such excess not to exceed $15,000, violated no rule of public policy; but that the bond taken by them, and on account of which they were induced to act, is a valid, enforceable obligation, which cannot be repudiated by its makers."

This case was followed by Cherry v. City State Bank, supra, where it was said in the syllabus:

"Where the owners of property located in a certain territory within a town, and parties engaged in business in said territory, enter into a contract with the owner of a lot in said territory, by which they agree to pay not to exceed the maximum amount of rental stated in said contract so long as the building to be erected on the lot is occupied by a United States post office, not to exceed a period of 10 years, the petition showing that in pursuance of said contract, a building was erected and a contract was entered into between the owner of the lot and the United States for the location of a post office on that lot for the period of 10 years at the nominal rent of $1 per annum, and petition showing that no improper or undue means were to be used, or were used, in securing the location of the post office, the contract was a binding obligation, and was not void as against public policy."

We are unable to distinguish the latter case from the case under consideration. In that case, a number of residents of Mangum had entered into a contract with G. W. Boyd, by which they had agreed to pay Boyd during the occupancy by the United States of a certain lot therein described for the location of the post office, the full amount of the rental of the property so occupied, and providing that the obligation would be null and void unless it was used by the government for a post office within 12 months from the date of the contract. The agreement to pay was for the consideration of Boyd providing a building for the use and occupancy by the government, for post-office purposes. In the instant case there is nothing in the contract or in the pleadings which would indicate that it was in contemplation of the parties that the plaintiff should perform any personal service or exercise any influence in securing the location of the post office. The only thing he undertook to do, as appears from the contract, or from the pleadings, was to submit a bid to the government, and, if that bid was accepted, to construct the building and equip it with fixtures necessary for the post office. We are unable to say from the contract or the pleading that it was the intention of the parties, or in contemplation, that the post office should be located at any place not to the advantage of the general public, or that such location was for the benefit of

the contracting parties to the exclusion of the general public. It is clearly made to appear from the contract that the contract depended upon the acceptance of the bid by the Postmaster General. There was nothing in the contract that required that the plaintiff do anything either to secure or to retain the post office location, other than to submit the bid, and if accepted to construct and equip the building. The contract entered into with the Postmaster General especially reserved to that official the right to abandon the building and the location for use as a post office at any time in his judgment the public service required it. We are unable to see anything in the contract unlawful or immoral, or anything contrary to the public welfare. While it is not clearly distinguishable, in so far as the facts are concerned, from Whitaker v. First National Bank of Sapulpa, supra, we think it is clearly in line with the opinion in that case and with all the other decisions of this court, and especially with Davis v. Board of Co. Com'rs and Cherry v. City State Bank et al.

The general rule appears to be that while courts look with suspicion on contracts which are intended or have a tendency to affect the location of public buildings and which provide for compensation to an individual, such contracts are not necessarily void. Their validity depends chiefly on whether the terms are fair to the general public or whether they tend to encourage corruption and a disregard for public interest. 13 A. L. R. Ann. 740.

We think the judgment should be reversed, with directions to set aside the judgments and to proceed in accordance with the views expressed in this opinion.

By the Court: It is so ordered.