No. 19,419.

THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. THE KANSAS CITY STOCK YARDS COMPANY OF MISSOURI, *Defendant.*

### SYLLABUS BY THE COURT.

1. STOCK-YARDS COMPANY—*Engaged in Intrastate Business as Common Carrier Without Legal Authority.* A corporation engaged in operating stock yards, owning a track between such yards and the railroads over which stock is transported thereto, and making a charge to the railroad companies for each car moved over such track, in accordance with a tariff which it has filed with the interstate commerce commission, is to be regarded as engaging in business as a common carrier.

2. SAME. The grant to a foreign corporation of the right to operate a stock yards does not carry with it the privilege of engaging in business as a common carrier in the manner stated.

3. SAME—*Intrastate Business Unauthorized.* To the extent of any intrastate business done in that manner such a corporation exercises a function which is unauthorized, and from which it will be ousted by the courts upon application of the proper executive officer of the state.

4. SAME. The fact that most of the business done in such manner is interstate, and that intrastate business is done only in virtue of the presence of a few cars of that character in an entire train, which is handled together, does not effect such a merger of the two classes of business as to place it all beyond the control of the state.

Original proceeding in quo warranto. Opinion filed January 9, 1915. Judgment for the plaintiff.

*John S. Dawson,* attorney-general, for the plaintiff; *W. P. Montgomery,* of Topeka, of counsel.

*M. W. Borders,* of Chicago, Ill., *L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the defendant.

*William R. Smith,* of Topeka, for The Atchison, Topeka & Santa Fe Railway Company.

The opinion of the court was delivered by

MASON, J.:   The Kansas City Stock Yards Company, a corporation organized under the laws of Missouri, operates stock yards situated in part in Kansas, having been authorized to do so by the charter board of this state.   The company owns, or controls as lessee, tracks leading to the stock yards, which are used by various railroads in delivering live stock thereto.   For the use of these tracks the stock yards company exacts a charge which it requires the railroad companies to pay.   The state contends that in virtue of these transactions the stock yards company is engaging in the business of transportation as a common carrier, without having the legal right to do so, and this action is brought on the relation of the attorney-general to oust the company from the exercise of that function.   The plaintiff asks for judgment upon the pleadings, and in case that is not granted, for an order restraining the acts complained of during the pendency of the action.

For many years the switching tracks were owned by the stock yards company and were operated substantially as at present, without a charge being made to the railroad companies for their use.   In May, 1913, persons interested in the stock yards company procured a charter for a Kansas corporation under the name of The Kansas City Connecting Railway Company, to which the title to the tracks in question was transferred, but the state utilities commission denied its application for authority to commence business.   The tracks were then leased to the stock yards company, which filed a tariff with the interstate commerce commission, providing a charge of seventy-five cents per car for their use.

The stock yards company seems clearly to be engaged in the business of transportation, so far as to make it subject to regulations applicable to common carriers.   (*United States v. Union Stock Yard*, 226

U. S. 286; *Tap Line Cases,* 234 U. S. 1.)  In the cases
cited some effect was given to the circumstance that
the corporations in question had been granted specific
authority to operate as common carriers, but that
was not the controlling consideration.  Here the filing
of the tariff with the interstate commerce commission
goes far to characterize the business undertaken.  If
a right to do business as a carrier resulted by impli-
cation from the express grant of authority to engage
in another business to which it was incidental, doubt-
less such implied right would have to be exercised
in conformity to traffic regulations the same as though
it were specifically mentioned in the charter.  Here,
however, we think the powers incidental to those ex-
pressly granted to the defendant company did not
include the character of business now under consid-
eration.  In its Missouri charter its purposes are thus
described:

"The purchase, construction, maintenance and oper-
ation of a general Union Stock Yards, with the nec-
essary inclosures, buildings, hotels, exchanges, struc-
tures, railroad tracks, switches, bridges and viaducts
for the reception, inspection, safe-keeping, feeding,
watering, weighing, delivering, transferring and car-
ing for live-stock."

In the application of the company for leave to oper-
ate in Kansas, which was granted by the charter board
of this state, the business in which it proposed to en-
gage was described as "the maintenance and opera-
tion of stock yards."  The authority thus granted
would doubtless include the right to use railroad tracks
and terminal facilities as an incident to the receiving
and handling of live stock, but we can not regard it
as authorizing the exaction of a charge for the use
of its tracks in transporting cattle from the railroads
to the stock yards, that being distinctly the function
of a carrier.

The defendant maintains that if it actually is en-
gaged in a business which is beyond its corporate

power, the court, having a discretion in the matter, ought not to interfere, because to do so would be inequitable, and would result in grave inconvenience and loss to the public, while no injury results to the state from the exaction of the charges referred to. It argues that no one but the railroad companies is affected by the charges, and that as they employ the defendant's track in making delivery of stock to the yards they ought in fairness and justice to pay for the privilege; that the defendant can not be required to allow the use of the track without compensation, and if its use is denied live stock destined for the yards will have to be driven on foot to reach them, entailing great loss upon shippers. We believe, however, that where a corporation is engaged in a business not authorized by the law, and the state by the proper executive officer makes objection, the court has no alternative, but must decree its discontinuance. To invoke such relief the state need not show any particular detriment to the public. "It has an interest in seeing that the will of the legislature is not disregarded, and need not, as an individual plaintiff must, show grounds of fearing more specific injury." (*The State v. Lawrence*, 80 Kan. 707, 103 Pac. 839.)

The defendant pleads that all business done over the tracks referred to is interstate commerce, but this broad averment is limited by these specific statements:

"That a train of live stock arriving at the terminal facilities of this defendant will be composed of say forty cars of live stock that is interstate, and mingled therewith there may be four or five cars that are intrastate; that this defendant will have no knowledge of the origin of said cars until they are pulled up to the unloading dock, in, over and upon the terminal facilities of the defendant herein."

The contention is made that this results in such a mingling of the two classes of shipments that the intrastate must be regarded as incidental to and merged in the interstate. The state of course can not inter-

fere with the interstate business done by the defendant, but we do not think the allegations quoted exhibit such a confusion of interstate and intrastate shipments as to cause the latter to lose their identity as such or to exempt them from state control. (*The Minnesota Rate Cases,* 230 U. S. 352.)

The defendant further maintains that the state can not, or at least should not, forbid the collection of a charge for the use of its tracks in connection with intrastate business, because if the company furnishes for local shipments, without compensation, the same facilities for which payment is exacted if the commerce is interstate, the result is an unlawful discrimination—a violation of the federal statute which forbids a carrier to give undue or unreasonable advantage to any particular description of traffic. (24 U. S. Stat. at Large, ch. 104, § 3, p. 380, 3 U. S. Compiled Statutes, 1901, title 56A, ch. 1, § 3, p. 3155, 4 U. S. Compiled Statutes, 1913, § 8565; *Houston & Texas Ry. v. United States,* 234 U. S. 342.) And the defendant represents that on this account if an order is made preventing the making of a charge to local shippers it will be compelled to deny to them the use of its facilities, thereby necessitating the driving of live stock from the railroads to the stock yards. The fact, however, that a corporation is engaged in interstate commerce can not authorize it to exercise the functions of a common carrier in purely local business without the permission of the state. The courts can not grant that permission, and until it is granted by the proper authority they must, upon due application, forbid the doing of acts which without it are illegal.

We conclude that upon the pleadings the plaintiff is entitled to a decree ousting the defendant from the exercise of the function of engaging in intrastate business as a common carrier.

WEST, J. (dissenting) : If a stock-yard company owns a piece of railroad track it does not become a

common carrier by permitting a railroad company to use such track.  Should it sell or lease a piece of land for depot purposes it would not thereby become a common carrier.