### No. 27,556.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Appellee*, v. THE NATIONAL INDUSTRIAL INSURANCE COMPANY, *Appellant.*

(263 Pac. 1060.)

#### SYLLABUS BY THE COURT.

1. QUO WARRANTO—*Jurisdiction—Ousting Insurance Company from Abusing Powers.* An action of quo warranto may be brought by the attorney-general in the name of the state against an insurance company to oust it from misusing its franchises and abusing the powers granted to it by transacting its business in an unsafe, unfair or dishonest manner in charging its policyholders excessive and unreasonable rates, and causing the cancellation of the policies of those who declined to pay such rates.

2. INSURANCE—*Excessive Rates—Evidence.* The evidence examined and held to be sufficient to support the findings of the court that the advancing and charging of rates were excessive, unfair and unreasonable.

3. QUO WARRANTO — *Jurisdiction — Partial Ouster of Corporation.* The partial ouster adjudged which restrained and enjoined the company from enforcing the rates and cancelling the policies or terminating them because of refusal to pay the illegal rates, and giving the corporation a reasonable time in which to establish reasonable rates and to reform its business methods, is held to be without error.

Appeal from Shawnee district court; division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed February 11, 1928. Affirmed.

*F. S. Jackson, Thomas C. Forbes, James E. Smith* and *L. S. Ferry,* all of Topeka, for the appellant.

*William A. Smith,* attorney-general, *John G. Egan,* assistant attorney-general, *William M. Bradshaw* and *Elisha Scott,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a proceeding in quo warranto brought by the state on the relation of the attorney-general against the

Quo Warranto, 32 Cyc. pp. 1425 n. 93, 1445 n. 38, 1461 n. 94, 1464 n. 24.

National Industrial Insurance Company, a corporation, organized under the laws of Kansas. The action questioned certain practices of that company in the matter of the raising of rates of insurance, and to enjoin the company from putting into effect higher rates alleged to be unreasonable and illegal. The defendant had entered into a contract to reinsure the outstanding policies of the National Council of the Knights and Ladies of the Orient, a Kansas corporation, which had been transacting business as a fraternal beneficiary association, insuring persons, mostly colored people, as against sickness, and temporary or permanent disability either as the result of disease, accident or old age. Under the contract of reinsurance the defendant, the National company, undertook the duties and obligations of the Orient association upon outstanding policies of about 1,100 in number for which the National company received assets of the Orient association to the amount of $10,104, and it then proceeded to carry the Orient policies according to their terms until January 1, 1924, when it undertook to advance the rates. At that time the number of policies outstanding had dwindled from 1,100 to 239 by reason of lapses and deaths. It was alleged that from 1918 to 1923 the amount collected from the policyholders was $11,665.12, and the amount of death losses paid on the policies was $5,607. That under good management there should have been and was a large surplus credited to said policies from the collection of premiums after paying losses and all other proper expenses, and that on or about January 1, 1924, the defendant declared to the holders of the outstanding policies that it would thereafter require them to pay the company new rates of monthly assessments higher than had theretofore been paid, and higher than the rates named in the policies, varying from about twenty-five per cent in cases of younger holders to about six hundred per cent in case of the older holders. It was alleged that the rates theretofore charged were sufficient and reasonable, that the proposed new rates of assessment were exorbitant and unreasonably large, and the enforcement of them would compel policyholders to abandon and surrender their policies and lose all the benefits accruing to them thereunder.

It was alleged further that the defendant had no right or authority under the reinsurance contract or the laws of the Orient association to put into effect the higher rates; that many of the holders had made tenders of the rates of assessment named in their

State, *ex rel.,* v. National Industrial Ins. Co.

policies, but which had been refused by the defendant, and that it would in the future refuse any tenders named in the policies and only accept those paying the higher rates. The prayer of the plaintiff was that the defendant be required to show by what authority or warrant it claims the right to make and enforce the higher rates of assessment or to cause the surrender or forfeiture because of the nonpayment of the higher rates.

In its answer the defendant denied the adequacy of the old rates and insisted that under the terms of the reinsurance contract it was authorized to increase the rates to be paid by the former members of the Orient association; insists that the proposed higher rates were reasonable and necessary to enable the defendant to pay the losses on the policies and to carry out in good faith its contract of reinsurance, and that to enforce the old rates would be discriminatory and confiscatory of the property of the defendant and deny to it the protection of the provisions of the federal constitution.

After considerable evidence was taken, most of which was given by actuaries and experts, the trial court found and adjudged that the new rates were excessive, unfair and unreasonable, and that the defendant be enjoined from maintaining or enforcing such raised rates against the holders of the Orient policies, and from terminating or canceling such policies on the ground that the holders of the same had refused to pay the higher rates. It provided for the reinstatement of policies after sixty days' notice upon the payment of the rate which was in effect prior to February 1, 1924. It was further provided in the decree that if the defendant established a new, reasonable rate of assessment on or before March 1, 1927, and had given notice to the policyholders of the new rate before the later date, such new and reasonable rate might be used in computing the assessments on and after February 1, 1924, in each of the cases mentioned.

Defendant appeals, and first contends that the state had no authority to maintain the action, that quo warranto is not a proper remedy to determine disputes as to proper rates of insurance or controversies as to the rights of the insured. These rights, it is urged, are private in their nature and may be determined in an ordinary action between the insured directly affected and the insurance company. The defendant is a corporation of the state engaged in business of a public nature. It is a business which is regu-

lated by the state and the legislature has provided that it shall be conducted under the supervision of the superintendent of insurance, with the further provision that if he finds such a corporation is transacting business in an unsafe, unfair or dishonest manner, he shall report the facts to the attorney-general who may bring an ouster proceeding against it. (R. S. 40-802.) In this instance the petition was verified by the superintendent of insurance. Apart from this statute there is a general code provision that an action of quo warranto may be brought against a corporation where it—

"Does or omits acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation or when any corporation abuses its power or exercises powers not conferred by law. . . . for any other cause for which a remedy might have been heretofore obtained by writ of quo warranto or information in the nature of quo warranto." (R. S. 60-1602.)

The public has an interest in the doings of the corporation. It was created by the state with franchises to be exercised fairly and honestly and over which the state retained visitorial power. It is carrying on a business subject to regulation by the state and its exercises of the franchises and powers granted is a matter of public concern. According to the averments of the petition and the evidence produced at the trial, the defendant was abusing its powers and transacting business with its policyholders in an unfair manner, and hence the state had a right through the attorney-general to maintain quo warranto for the correction of such abuses. An absolute ouster was not asked or granted. The inquiry was limited to an abuse of power, and only a partial ouster was adjudged. In *State, ex rel., v. Oil & Gas Co.,* 105 Kan. 340, 182 Pac. 547, a quo warranto proceeding brought by the attorney-general in the name of the state for reforming the business methods and practices of the corporation, was sustained and a partial ouster adjudged. That was the extent of the judgment in the present case. In *State, ex rel., v. Regents of the University,* 55 Kan. 389, 40 Pac. 656, a partial ouster was ordered where the corporation was abusing its powers in the collection from students of excessive and illegal fees. (See, also, *Albach v. Fraternal Aid Union,* 100 Kan. 511, 164 Pac. 1065.)

The principal contention in the case is that the action of the defendant was not an abuse of its powers in that the rates charged to policyholders were not unreasonable or excessive, and that it had the right to cancel the policies where the advanced rates were not

State, *ex rel.*, v. National Industrial Ins. Co.

paid.. The testimony, of which there is a great volume, contains exhibits showing the ages of the insured, the premiums paid during a number of years, the profits and death losses, and the sick and accident claims of the Orient company which were paid. There were also experience tables of the National Fraternal Congress and the Metropolitan Life Insurance Company. It is not practicable to reproduce the evidence here or to analyze the testimony received and upon which the court based its decision. The basis of the decision of the trial court is fairly well disclosed by an extract from its memorandum opinion filed at the time the decision was rendered:

"There is one phase of the matter before the court, however, that leads to the conclusion that the establishment of the rates in question by the defendant corporation in the manner in which it was done was unwarranted. Perhaps the reasonableness of the rates ought not to be judged by what actually occurred after their installation. But what occurred is what should have been foreseen as likely to occur. Raising rates three or four hundred per cent at one time on a policy of $250 or $500 carried by a person past fifty or sixty years of age was likely to have but one effect, the dropping of the policy. While these parties had previously had low insurance, they had presumably, if not in fact, been paying something for a reserve. They were doubtless people of small means. It is my opinion that the making of a rate which practically drove so many of them out of the company by the marked increase at one step was unwarranted and unreasonable. Assuming, what I believe to be the fact, that a considerable increase was proper and lawful under all the circumstances, the rate made was too high, and the way the increase was made was to some extent in disregard of the rights of the policyholders. A better and more equitable plan can be devised. Between March 22 and August 1, 1924, the insurance liability of the defendant company for death claims on the Orient policies was reduced from $49,605 to $4,750. By this means, if the rates are allowed to stand, the defendant company will retain all of the reserve accumulated for payment to the policyholders of the Orient company remaining after the payment of the $4,750 and some comparatively small liabilities on sick and accident claims. These payments are only to be made as loss may occur in the future. Their present value would be much less than the face of the policies. Such a result ought to be avoided. In addition, the rates established February 1, 1924, were computed for the attained ages of the policyholders and included a sufficient loading for expenses, and to cover the higher mortality among colored people. No reason is perceived why receipts from premiums under the new rates alone would not take care of death losses and sick and accident claims under the 30 remaining policies."

From the evidence before the court it concluded:

"That the rates were unreasonable as made and that some new plan ought to be formulated which may give those holding policies on February 1, 1924,

who are entitled to relief, an opportunity to protect their interests in a reasonable manner."

We think the evidence was amply sufficient to uphold the findings of the court. In the judgment rendered, after ousting the defendant from the misuse of the corporate franchise and the abuse of powers granted, the court carefully protected the rights of the defendant by allowing it to reform the business methods of the corporation within a reasonable time, and allowing the fixing of reasonable rates and just rules regarding forfeiture and cancellation of policies, and only granted a partial ouster. We think the judgment awarded justice, and no error is found in the record.

The judgment is affirmed.