No. 31,225

THE STATE OF KANSAS, ex rel. C. A. MORGAN, County Attorney of Harvey County, *Appellee*, v. THE CITY OF NEWTON, and W. G. ADAMS, Mayor, H. G. HAWK and W. J. TROUSDALE, Commissioners of the City of Newton, Harvey County, and THE NEWTON GAS COMPANY, *Appellants*.

(23 P. 2d 463.)

Opinion filed July 8, 1933.

*A. M. Ebright, P. K. Smith,* both of Wichita, *J. S. Henderson,* of Newton,

and *Robert D. Garver,* of Kansas City, Mo., for appellant The Newton Gas Company.

*Ezra Branine, Alden E. Branine* and *J. Rodney Stone,* all of Newton, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action in the nature of quo warranto for a declaratory judgment and seeking to have adjudged invalid a franchise granted by the city of Newton to the Newton Gas Company, primarily because of alleged corrupt practices at the franchise election. Both defendants moved to strike certain portions of the petition, which motions were overruled. They then demurred to the petition. The demurrers were overruled, and the Newton Gas Company has appealed. Since the demurrer raised all questions argued, we need not further notice the motions to strike.

The action is brought in the name of the state on the relation of the county attorney. Briefly, the petition filed February 23, 1932, alleges that Newton is a city of the second class operating under the city-manager form of government; that the Newton Gas Company is a corporation organized under the laws of this state and engaged in the business of distributing gas in the city of Newton; that on December 1, 1931, the governing body of the city passed a resolution calling a special election on January 12, 1932, to vote on a proposed franchise for the Newton Gas Company; that the notices for the election were published (a question was raised as to the validity of this publication, but that has been abandoned); that on January 12, 1932, an election was held as provided in the proclamation therefor; that at such election 1,472 ballots were cast in favor of the franchise and 1,328 against it; that on January 19, 1932, the governing body of the city of Newton caused to be published an ordinance purporting to grant the franchise, and on the same day the Newton Gas Company filed with the city clerk its written acceptance of the ordinance. Copies of the resolution calling the election, the notice published with affidavit of publication, the resolution of January 19, 1932, pertaining to the gas franchise, the ordinance granting the franchise, and the acceptance of the ordinance by the Newton Gas Company were attached to and made a part of the petition.

It is further alleged that the ordinance and the franchise granted

by the city of Newton to the Newton Gas Company is invalid for the reason: That defendant, the Newton Gas Company, through its duly authorized agents (two of whom are named), resorted to illegal and corrupt practices which caused a sufficient number of votes to be cast in favor of the franchise, which otherwise would have been cast against it, to change or render doubtful the result, which illegal and corrupt practices, summarized, are as follows:

"(1) By promising employment to voters in the event the franchise carried; (2) by paying or promising to pay money to the voters for the purpose of influencing or procuring such voters to come to or remain away from the polls; (3) by paying money to and employing persons to convey voters to and from the different voting places on election day; (4) by corrupting, procuring, or attempting to corrupt or procure voters to give or forbear to give their votes, by gift, reward, office or employment, or by promise, agreement or security therefor; (5) by agreeing to give credit on the gas bills already rendered and earned, to a certain class of voters in event the franchise carried; (6) by publishing certain advertisements, copies of which advertisements are attached to plaintiff's petition, . . . such advertisements promising: (a) Employment to a certain class of persons in event the election for the franchise carried; (b) cash consideration to a certain class of voters by way of credit on then earned gas bills; (c) to spend a large sum of money in the city of Newton, and (d) to employ local labor in rehabilitating their gas distribution system."

It is further alleged: The Newton Gas Company is now operating under the franchise; that both defendants claim the franchise and ordinance to be valid, while plaintiff contends it is invalid for the reasons previously stated. The prayer is that the validity of the franchise and ordinance be determined by the court, and that they be held invalid.

The first question presented by appellant is the authority of the state to maintain the action. It is argued that the city is a subdivision of the state, with legislative powers, authorized to grant franchises (R. S. 14-1701), and is not charged with exceeding its powers or with illegal and corrupt practices in connection with the election; that the city is the real party in interest (R. S. 60-401) and might maintain the action (*City of Topeka v. Water Co.*, 58 Kan. 349, 49 Pac. 79; *Olathe v. Railway Co.*, 78 Kan. 193, 96 Pac. 42), and to permit the state, which is not the real party in interest, to bring the action against a subdivision of the state, with legislative powers exercised in a way which the state does not criticize, is to permit a party, the state, to sue itself. We think there is no doubt about the authority of the state to maintain the action. While

R. S. 60-1601 abolishes the writ of quo warranto, it provides that remedies previously obtainable by such a writ may be had in civil actions; R. S. 60-1602 authorizes an action to be brought in the supreme court, or the district court, when anyone shall unlawfully hold or "claim any franchise within this state," and the next section authorizes the action to be brought by the attorney-general or the county attorney in the name of the state. Hence there is specific statutory authority for the bringing of this action in the name of the state on the relation of the county attorney. The state is a real party in interest in an action brought by it to correct corporate abuses. (*State, ex rel., v. Comm'rs of Garfield County,* 54 Kan. 372, 38 Pac. 559; *Olathe v. Railway Co.,* supra; *State, ex rel., v. Stock Yards Co.,* 94 Kan. 96, 145 Pac. 831; *Telephone Co. v. Telephone Association,* 94 Kan. 159, 146 Pac. 324; *State, ex rel., v. National Industrial Ins. Co.,* 125 Kan. 119, 263 Pac. 1060; *City of Wichita v. Wichita Gas Co.,* 126 Kan. 764, 271 Pac. 270.)

Appellant contends that our statutes relating to illegal or corrupt practices at elections do not apply to a special election for the adoption of a franchise in a city of the second class. The petition in this case attempts to charge violations of R. S. 21-804, 21-805 and 21-815, being the part of our crimes act relating to elections; also, R. S. 25-1701, 25-1702, 25-1705, 25-1709 and 25-1711, being sections of the corrupt-practice act relating to elections. R. S. 14-1206, relating to cities of the second class under a commission form of government, provides that the general election and primary election laws of the state shall apply, so far as applicable, to all elections held under the act; and R. S. 12-1003, relating to cities operating under the city-manager plan, provides that all nominations and elections in such cities shall be governed by the laws of the state relating to elections in cities under the commission form of government. The section of the statute under which this election was held (R. S. 14-1701) provides that the election may be held "at a general or special election called for the purpose." If the general election laws apply to elections in the city, they certainly would be applicable to an election on the franchise, if held at a general election. We see no reason for excluding them if a special election be called for the purpose of voting on the franchise.

Appellant argues that the vote on the granting of a franchise differs fundamentally from a vote for a candidate for office; that at

an election to grant a franchise, the real question before the voters is one of material advantages, much as it would be if the election were to locate a county seat, citing in this connection *State v. Elting,* 29 Kan. 397, where it was held:

"But where the question is as to the location of a county seat, that question is one of convenience and material advantages; and where citizens of a town, contesting for such county seat, offer to donate money or other property to the county in case the county seat is located at such town, that offer presents no considerations which may not properly be considered by the electors, and vitiates no votes cast in pursuance of such offer." (Syl. ¶ 4.)

Generally speaking, it may be said that an agreement is not invalid because it provides for the furnishing of certain facilities to the public, or the payment of money to a government or governmental subdivision, on consideration that a county seat or public building shall be located at a designated place. (13 A. L. R. 734; *Currier v. United States,* 184 Fed. 700; *Hawes v. Miller,* 56 Ia. 395, 9 N. W. 307; *Thompson v. Board of Supervisors, etc.,* 40 Ill. 379; *Davis et al. v. Board of Comm'rs of Choctaw County,* 58 Okla. 77, 158 Pac. 294.)

The matter takes on a different aspect, however, which the courts do not approve, when the donation or gift is to an individual. (13 A. L. R. 740; *Woodman v. Innes,* 47 Kan. 26, 27 Pac. 125; *Elkhart County Lodge et al. v. Crary,* 98 Ind. 238; *Whitaker v. First Nat. Bank of Sapulpa,* 56 Okla. 270, 155 Pac. 1175.)

The granting of a franchise by a city to a public utility is not altogether one of convenience and material advantages, as those terms are used in the county-seat election case (*State v. Elting,* supra). The city, acting in its governmental capacity, grants the franchise to the utility for the purpose of carrying out a governmental or quasi-governmental function. The ability, integrity and fair dealing of the grantee of a franchise are just as important in the conduct of good government as those qualities are in a candidate for office.

Appellant contends the petition does not state facts sufficient to constitute a cause of action. A summary of the allegations of the petition was made earlier in this opinion and need not be repeated. Among them is the specific allegation that defendant paid, or offered to pay, electors to give or withhold their votes at the election. We deem this sufficient to state a cause of action. It was proper, therefore, to overrule the general demurrers to the petition. Since

this appeal comes to us on the pleadings we need not speculate what the evidence will show under other allegations made, or attempt to determine in advance whether certain things would or would not vitiate the election. Those matters can be determined better after it is known how the conduct charged related to the election. Other points argued do not need special comment.

The judgment of the court below is affirmed.

BURCH, J. (dissenting in part): The petition alleged the gas company resorted to seven separate corrupt practices. In the opinion it is held one of the seven was good ground for forfeiture, and I concur. I also concur in the portion of the opinion stating this court need not speculate on what the evidence might be.

I dissent from the statement that the court should not attempt to determine in advance whether certain things would or would not vitiate the election. In the district court the question will be whether an objection to introduction of evidence to establish charge one, charge two, etc., should be sustained. The district court will have no light on that subject from the majority opinion, and this court should proceed to finish decision of the case.