No. 32,793

The State of Kansas, ex rel. Clarence V. Beck, Attorney General, *Appellee*, v. The Bank Savings Life Insurance Company, *Appellant*.

(52 P. 2d 639)

·Opinion filed December 7, 1935.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove,* all of Topeka, *Harry Frazee,* of Lawrence, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellant.

*Clarence V. Beck,* attorney general, *John G. Egan,* assistant attorney general, and *John L. Hunt,* of Topeka, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This action was brought by the state on the relation of the attorney general, at the direction of the governor, for the appointment of a receiver of the property and affairs of the defendant, the reinsurance of its outstanding policies of life insurance and annuity bonds, the winding up of its affairs, and the forfeiture of its charter. Shortly stated, the grounds for the action were that defendant was in a bad financial condition, which was growing worse, to the injury and danger of the holders of its policies and annuity bonds; that many of such holders had been demanding the

cash-surrender value of their policies and bonds; that defendant had paid out a large amount for such cash-surrender values; that a large part of the securities on deposit with the state treasurer, on account of its capital stock and reserve, were greatly depreciated in value; that those in control of defendant had made many bad investments, and some of them had endeavored to make away with a large amount of its assets, to the danger and injury of the holders of policies and annuity bonds. The petition further alleged the commissioner of insurance had exhausted all his rights and powers under the laws of the state, so far as the same were available to him, and that it was impracticable for him to have held, or to hold, a hearing concerning the affairs of defendant, or to act upon the result of such a hearing, and that such commissioner is without power under the laws of the state, or otherwise, to prevent and correct the abuses and wrongs complained of, for which reasons it is necessary for the plaintiff to bring this action. A demurrer to the petition was overruled. A hearing was had upon plaintiff's application for the appointment of a receiver, at which a large volume of evidence was introduced, and at the close of which defendant's demurrer to the evidence was overruled and the court made extended findings of fact, and also made conclusions of law to the effect that: (1) The solvency of defendant is impaired; (2) defendant is doing business in violation of the laws of the state; (3) the affairs of defendant are in an unsound condition so as to endanger the rights of policyholders; and (4) that a receiver should be appointed as prayed for in the petition. Defendant then filed an answer consisting of a general denial. The parties stipulated to submit the cause to the court upon the evidence taken upon the hearing for the appointment of a receiver. Whereupon, judgment was rendered for plaintiff, a receiver was appointed, who has taken charge of the affairs of defendant, filed an inventory, and otherwise proceeded under orders of the trial court. Defendant's exceptions to the findings of fact made by the court were overruled, also its motion for a new trial, and it has appealed.

On the appeal three points are argued: *First,* that the court erred in overruling defendant's motion to dismiss the petition, to dismiss the motion for the appointment of a receiver, and the demurrer to the petition; *second,* in overruling defendant's demurrer to the evidence; and, *third,* that the court erred in appointing a receiver for

the defendant under the court's findings of fact and the evidence produced at the trial.

We have concluded no good purpose would be served by an exhaustive, detailed statement of the facts disclosed by the record in this case and that it is sufficient to summarize them as follows: In October, 1908, defendant was incorporated as a life insurance company under the laws of this state, with its principal office at Topeka. From that time until about 1930 or 1931 it was a growing, apparently prosperous company, and had insurance in force amounting to more than $40,000,000. The original president and active managing officer through those years, having died, was succeeded by others in 1930. By the early part of 1932 the insurance commissioner was receiving numerous complaints from policyholders of their inability to secure payments due them under their policies, whereupon he caused an examination of the company to be made as to the condition of its business as of March 31, 1932. This examination showed the company to be insolvent by more than half a million dollars. This examination also disclosed the records of the defendant were in bad condition and it had been suffering from lack of proper management. The insurance commissioner discussed these defects of records and management with the officers of the company, who promised corrections and improvement, very few of which promises were carried out. Another examination made by the insurance commissioner of the affairs of the company at the close of business in 1932 showed it to be insolvent more than $300,000. There was a third examination made at the close of business in 1934, which showed defendant insolvent by more than $50,000. On its face this would indicate an improvement in the financial affairs of defendant, but the evidence disclosed that these findings of the extent of insolvency were computed upon a somewhat different basis in the later reports than in the first one and that in fact there was no real improvement in the financial status of the company. The affairs of the company were in such condition in 1932 that the commissioner of insurance would not renew its certificate of authority to transact business in the state, and it transacted business for a time by the sufferance of the commissioner of insurance and upon the assurance to him of its officers that they would improve the defects in its records and in its management.

About July 1, 1933, a group of persons acquired, in the name of

one of them, J. N. Mitchell, a majority of the capital stock of the defendant company and Mitchell became president of defendant. On that date Mitchell, as plaintiff, filed an action in the federal district court of this state against Charles F. Hobbs, as commissioner of insurance of the state, as a result of which plaintiff in that action procured a temporary order, mandatory in its nature, that the commissioner of insurance issue to defendant a certificate of authority to do business in the state. In July, 1933, defendant's board of directors approved this action by Mitchell, and defendant has paid a large part, if not all, of Mitchell's expenses in that action. Later the commissioner of insurance gave notice to defendant and its officers that on October 9 he would begin and conduct a hearing into the condition of the defendant company. On October 10 the federal court, in the action brought by Mitchell, and on his motion, made an order requiring the commissioner of insurance to issue a certificate of authority to the defendant company to do business in Kansas, effective "until the determination of this matter," which order had not been revoked at the time of the trial of this action in the district court. On the same date the federal court issued an order restraining the commissioner of insurance from holding a hearing concerning the affairs of the defendant company "until the determination of this matter." This last order remained effective until in December, 1934, when it was set aside insofar as it restrained the commissioner of insurance from conducting hearings. This appears to have been brought about by the fact that on December 7, 1934, Mitchell and his associates entered into a contract with certain parties of St. Louis to sell the controlling interest in the defendant company to them for $100,000, for which a demand note was given, and perhaps some other considerations, as a result of which the St. Louis parties were made officers of the defendant company. On the evening of the same day action was taken which we deem it unnecessary to describe in detail and which would have had the effect of taking a large amount of the valuable assets of the defendant without an adequate return therefor; but these particular transactions were averted by the prompt action of the chairman of the board of directors, who had no notice of that meeting and was not present, and perhaps of one or two others. The result of the order made by the federal court in December was that the contract of Mitchell and his asso-

ciates to sell the shares of stock to the St. Louis parties was canceled and persons suggested by Mitchell were placed in the official positions of the company. The insurance commissioner began an examination of the affairs of the defendant company in December, 1934, which was completed in March, 1935, and on April 4 of that year he gave notice to the company that he would hold a hearing upon its affairs beginning April 16, 1935. Upon the motion of Mitchell, in the action brought by him against the commissioner of insurance, the federal court made an order requiring the commissioner to continue such hearing until May 10. An appeal was taken from that order to the United States circuit court of appeals, where a hearing was had in September, 1935, and an opinion filed November 15, 1935, reversing the order appealed from, with directions that the court dismiss the suit brought by Mitchell at his cost. On April 16, 1935, Mitchell presented to the federal court, in the action which he had brought against the insurance commissioner, a request for the court to approve an agreement for reinsurance of the policies and contracts of the defendant company with the United Benefit Life Insurance Company of Omaha, Neb., a draft of which agreement had been signed by the officers of the company on April 2. The court required notice of this to be given to the insurance commissioner. It does not appear that it ever has been acted upon. The advisability of approving that contract is not before us on this appeal.

The petition in this case was filed May 11, 1935, and service upon defendant was had the same day. On May 27 the insurance commissioner notified the defendant company that it would hold a hearing concerning its affairs on May 29. Upon that day the hearing was begun, but at the request of the defendant was continued until June 3. Before that date, and on May 31, J. N. Mitchell, as complainant, filed an action against the defendant company in the federal district court, being a stockholder's suit, for the appointment of a receiver, and notice was given the insurance commissioner and the attorney general that the motion for the appointment of a receiver would be presented to the court on June 3. It does not appear that this hearing ever was had, for on June 1 the trial court in this case began the hearing for the appointment of a receiver in this action, with the results previously stated.

While defendant, as appellant here, has argued three points on

which it seeks to reverse the judgment of the trial court, the first two may be considered together, for they are grounded upon the same basic argument, namely, that plaintiff had no authority to bring and maintain this action; that such an action could be brought by the attorney general only upon facts communicated to him by the commissioner of insurance after a hearing. Appellant points out that it is neither alleged in the petition nor shown in the evidence that such a hearing had been held by the commissioner of insurance, or that communication of facts developed by such hearing had been given by him to the attorney general. On this point appellant cites and relies upon our statute (R. S. 1933 Supp. 40-222) as construed by this court in *State, ex rel., v. National Industrial Ins. Co.*, 125 Kan. 119, 122, 263 Pac. 1060, and *Wright v. Federal Reserve Life Ins. Co.*, 131 Kan. 601, 606, 293 Pac. 945, certiorari denied, 283 U. S. 851, and cases to the same effect as these from other states having similar statutes. Obviously this statute contemplates that the commissioner of insurance, with respect to an insurance company in question, is at liberty to conduct the examination, suspend the insurance company from doing business, and communicate the facts relating thereto to the attorney general. The opinions cited also are predicated upon that view. We are unwilling to hold the statute to apply, and think the legislature never intended it should apply to a case in which the insurance company, by an action in federal court, tied the hands of the commissioner of insurance so that he could not conduct an investigation into the affairs of the company for fifteen months, and for more than two years could not make an order suspending the company from doing business without subjecting himself to contempt of the federal court, even though the action in federal court upon final hearing upon appeal was held to have been without merit from the beginning. The business of insurance is impressed with the public interest. It is important that an insurance company be managed in such a way that it can carry out its obligations with its policyholders. Harassing suits by stockholders, or others, are detrimental to its successful operation. Our legislature has very wisely provided that complaints against the management of an insurance company should be taken up with the commissioner of insurance, and he is authorized to examine into the affairs and financial condition of the company, may make suggestions as to its

management, and endeavor to correct any irregularities or abuses found, without notoriety which would injure the financial standing of the company, and if these measures do not bring satisfactory results, to conduct a formal hearing, suspend the company's certificate of authority to do business in the state, if the facts require such action, and communicate those facts to the attorney general, whose duty it shall be to prosecute an action to dissolve the company and to enjoin it from doing business in the state. As respects the defendant company, the commissioner of insurance was proceeding in harmony with the statute. When complaints of policyholders reached him early in 1932 he made an examination into the affairs of the company, found it to be insolvent, its records in bad shape, and to be suffering from bad management. He took those matters up with the officers of the company, who promised improvement. Naturally the commissioner of insurance was loath to force into liquidation an insurance company apparently prosperous until recently. Had defendant and its officials at that time coöperated with the commissioner of insurance in his efforts to preserve this company in its financial standing there would have been no necessity for any of the litigation which has followed, only a part of which has been mentioned above. They did not do this, but apparently went on much as though an examination had not been made and the advice and admonitions had not been given. In 1933, when he was pressing for further action tending to restore the solvency of the company, it financed an action in the federal court, in the name of the holder of the majority of its stock, for the sole purpose of tying the hands of the commissioner of insurance and making it impossible for him to perform his duties under the statute, and succeeded in doing so even until after this action was brought and tried in the court below. In the meantime defendant and its officers took no adequate steps to restore the financial condition of the company, but on the other hand some of them, at least, increased their activities in a way to injure the financial status of the company. In that situation naturally one of two results must follow—that the company would fail financially, to the loss of its policyholders, or it was essential that the proper state officers take the necessary steps for its orderly liquidation. Ordinarily the state, on the relation of the attorney general, may bring an action to correct corporate abuses and, if necessary, to liquidate

the corporation. That would be true with insurance companies were it not for the statute above cited. But since the defendant itself had made action under that statute impossible, it may be disregarded so far as authority to maintain this action is concerned. While it might be proper to attach some special significance to the fact the governor directed the attorney general to bring this action (R. S. 75-702), we need not rely upon that. Under the facts disclosed by the record in this case the attorney general might have brought the action without such direction. (R. S. 60-1601 *et seq.;* R. S. 17-807; and, see *State, ex rel., v. City of Newton,* 138 Kan. 78, 81, 23 P. 2d 463, and cases there cited.) It necessarily follows that the first and second points argued by defendant on this appeal are not well taken.

Appellant argues the findings of fact and the evidence did not justify the conclusions of law and the judgment rendered by the trial court. The findings of fact made by the trial court cover ninety pages of the printed abstract. We have examined these and the evidence as abstracted. We need to add nothing more to the general statement hereinbefore made than to say that the amount of insurance in force had been reduced to but little more than one half of what it was in 1931. The securities on deposit with the state treasurer for the reserve and capital stock of the company were inadequate in amount and much more inadequate in value, and officers of the company were repeatedly seeking to withdraw some of the best securities of the company and exchange them for those of less value. There was not only a lack of coöperation with the commissioner of insurance by the defendant and its officials, in such efforts as he was able to make with his hands tied by the action of the federal court, to get this company in a sound financial condition, but there was decided and repeated opposition on behalf of defendant and its officers to measures of that character. Both the findings of the trial court and the evidence before it were amply sufficient to sustain the judgment of the court.

We find no error in the record. The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.