**KANSAS CITY, KAN., et al. v. ATCHISON, T. & S. F. RY. CO.**

No. KC–47.

United States District Court
D. Kansas.

Nov. 19, 1951.

Alton H. Skinner, William Drennan, Charles W. Lowder, and Otto Ziegelmeyer (of Drennan, Lowder & Ziegelmeyer), and Blake A. Williamson and James K. Cub-

bison (of Williamson, Cubbison & Vaughan), all of Kansas City, Kan., for plaintiff.

C. J. Putt, W. E. Treadway, Henry Schulties, Jr., and J. B. Reeves, all of Topeka, Kan. and Willard L. Phillips (of McAnany, Van Cleave & Phillips), Kansas City, Kan., for defendant.

MELLOTT, Chief Judge.

The instant case has been fully tried to the court; and, although it is aware of its obligation to make findings of fact and conclusions of law,[1] it refrains from doing so until consideration has been given to certain questions discussed at the trial and argued upon brief, they being properly raised under Rule 12(h).[2] Specifically, they are: First, whether "the court lacks jurisdiction of the subject matter"; and, second, whether the complaint fails "to state a claim upon which relief can be granted".

Most of the basic facts were stipulated, are shown in answers to interrogatories, or are incontrovertible. The court, for present purposes, will limit its recitation of the facts to those within the categories enumerated.

The complaint alleges, in substance, that the City of Kansas City, Kansas and its Board of Public Utilities (a quasi-legal entity) hereinafter called plaintiff, were compelled to pay the freight on a large number of cars of coal at the interstate rate although the shipments originated in Kansas and were delivered in Kansas. The averment is "that the rate charged * * was a rate higher than permitted under [tariffs on file with the Kansas Corporation Commission pertaining to intrastate shipments], * * *. which amounts to an overcharge, and that plaintiff has been damaged by the payment of the sum in the amount of $5,059.20." The answer alleges

that the cars moved in interstate commerce through the states of Kansas and Missouri and that the interstate rate applied. Giving effect to the stipulation of the parties, if the court may grant any relief, it seems that it should be in the form of a judgment for plaintiff for the amount sought.

Maps, plats and diagrams received in evidence partially depict the physical characteristics of Kansas City, Kansas and Kansas City, Missouri and suggest the reason for, and the probable genesis of, the present controversy. The boundary between Kansas and Missouri extends southward from the confluence of the Kansas river with the Missouri river. The latter flows generally eastwardly and southernly while the former runs generally eastwardly and northernly. A substantial portion of the City of Kansas City, Kansas, is on the hills between the two rivers above their confluence; and the topography is such that railroad switching from north to south or vice versa in the western or central part of the city has never been found to be practicable or feasible.

The power plant of the plaintiff is in the flats, or bottom lands, of the Missouri river, the industries located there being served chiefly by the Missouri Pacific and Union Pacific railroads. The flats, or bottom lands, of the Kansas river, and especially the portion thereof approximately five miles directly south of the plaintiff's power house is extensively devoted to industrial use and switching of railroad cars, the portion north of the river being used by the Union Pacific and Rock Island railroads and the portion south of the river being used by the Santa Fe. South of the confluence of the two rivers, partially in Missouri, and partially in Kansas, are various industries, including the Kansas City Stock Yards. The yards are approximately two miles south of the con-

---

1. Rule 52, F.R.C.P., 28 U.S.C.A.

2. *"Waiver of Defenses.* A party waives all defenses and objections which he does not present * * * by motion as hereinbefore provided * * * except (1) that the defense of failure to state a claim upon which relief can be granted, * * * may * * * be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and except (2) that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. * * *" Rule 12(h), as amended Dec. 27, 1946, effective March 19, 1948.

fluence and cover about a section of ground part being in Missouri and part in Kansas. The Union Depot is located in Missouri approximately a mile and a half southeast of the Stock Yards.

Approximately three miles south and west of the confluence of the rivers and south of the Kansas river is the Argentine section of Kansas City, Kansas. Originally a city of the third class, it was annexed to, and became a part of, the City of Kansas City, Kansas, about a third of a century ago. The main line of the Santa Fe enters Greater Kansas City from the west passing through Argentine, at which point a station (of sorts) has been maintained for the past half century. Extensive switch, and make-up and break-up yards are maintained by the Santa Fe in this general vicinity, east and west of the Argentine station.

In the published tariffs of intrastate traffic filed by the defendant railroad company with, and approved by, the Kansas State Corporation Commission[3] or the predecessor regulatory body, the City of Kansas City, Kansas, is not designated; but all tariffs pertaining to shipments to or from that city designate "Argentine" as the point of shipment or receipt. The intrastate rate on nut and slack coal between Pittsburg Kansas and Frontenac Kansas, as points of shipment and "Argentine," during the period in issue in this case, was lower than the interstate rate on such shipments from the same points to Kansas City, Missouri.

In the State of Missouri, and in the flats, or bottom lands of the Missouri river below the confluence of the Kansas river, at and prior to the shipments in question, the Missouri Pacific Railroad Company had established and was maintaining, extensive switching, break-up and make-up yards. From these yards, extending westward and northward, generally paralleling the Missouri river and crossing the Kansas river near its mouth, were switch tracks, leading into the area in which the power station of the city is located. In the general vicinity of the stock yards,

but east of the yards and wholly within the state of Missouri, are extensive switch tracks, extending generally northeastward and southwestward from a point near the eastward terminus of the Santa Fe yards to a point near the western terminus of the Missouri Pacific yards. The practice has grown up—although the court does not, at this time, either condone or condemn it—of switching cars of coal received at "Argentine" on the Santa Fe and consigned to the power plant of the plaintiff, over the tracks east of the stock yards to the Missouri Pacific yards where they are then delivered to a switch adjoining the power plant. Thus they move interstate some five or six miles.

The general statements which have been made are without prejudice to the parties inasmuch as findings have not been settled as provided by the court's local rules of practice. They have been made for the purpose of making discussion of the questions of law more understandable. In fairness to the plaintiff, however, the court alludes briefly to the contentions made by the plaintiff and to some of the evidence relied upon in support of them.

The Kansas City Connecting Railway Co., as the name suggests, aids in handling cars brought into, or loaded in, Greater Kansas City. It is a Missouri corporation, successor to a former Kansas corporation, engages in interstate transportation and intrastate transportation in Missouri, but has not been authorized by the Secretary of State of Kansas to do business in that state. One of its tracks extends in a general northerly direction from a point where it intersects the tracks of the Santa Fe, through, or adjoining, the stock yards, where it connects with a track of the Union Pacific. This track of the Kansas City Connecting Railway Co. is wholly within Kansas and, although not restricted in the tariff to the movement of livestock, is largely devoted to that purpose. The president of this company testified there was "a possible physical connection [over this track] between * * * [the] two railroads"—Union Pacific and Santa Fe—

3. Chapter 66, General Statutes of Kansas 1949.

and the evidence indicates the former could make delivery over its, or other, tracks to the plaintiff's power plant. Witnesses for the defendant, however, testified that the movement of cars over the suggested route "from an operating standpoint * * * would not be a practical operation," pointing out that approximately 3000 cars of freight are handled daily, 250 to 300 of them being delivered to the Missouri Pacific while but six or seven cars of coal per day are delivered to the plaintiff's power plant.

Diversity of citizenship is not alleged and does not appear to exist, both parties being Kansas corporations; so the court has no jurisdiction under Title 28 U.S.C.A. § 1332. Plaintiff contends, and in the answer filed by the defendant it is admitted, that the matter in controversy arises under the provisions of the Interstate Commerce Act.[4] At the trial, however, the defendant expressed doubt as to the soundness of that view; and, inasmuch as attempted adjudication of a matter not within the jurisdiction of the court would be bootless and nugatory, briefs upon the question were requested and have now been examined.

The jurisdiction of this court must be based upon Title 28 U.S.C.A. § 1337.[5] Is this a "civil action * * * arising under * * * [an] Act of Congress regulating commerce"? Plaintiff apparently contends that it is, while the defendant insists it is not. True, plaintiff only indirectly relies upon this statute, pitching its argument generally along this line: The defendant is engaged in both interstate and intrastate transportation: hence it is under the Interstate Commerce Act. Being under the Interstate Commerce Act, this court has jurisdiction of the action. But the question is not quite that simple. Viewed realistically, the action is by a Kansas corporation against a Kansas corporation to secure reparation for an overcharge in freight rates. The overcharge is said to exist because the shipments were intrastate. Thus the initial postulate, which the plaintiff would have the court adopt, is one which, it would seem, deprives it of jurisdiction. If the shipments were intrastate, as contended, then action to recover an amount in excess of the intrastate rate should be brought in the state courts under the Kansas act rather than in this court under an "Act of Congress regulating commerce".

But, says plaintiff, there is a substantial federal question to be determined, namely, whether the instant suit is within the ambit of Section 9[6] as one in which the claim for damages is against a "common carrier subject to the provisions of" that chapter of the Interstate Commerce Act. In this connection it is claimed that "a federal question arises, if for no other reason, from the standpoint these cars actually traveled in interstate commerce." Therefore, it is said, this court, on the authority of Southern Pac. Co. v. Van Hoosear[7] and the cases therein cited, should determine the federal question; and, upon determination that the shipments were intrastate and that no federal question remained, should decide all of the questions in the case, including plaintiff's right to recover the amount exacted as a freight charge in excess of the intrastate rate.

■ The argument is not wholly without merit; but this court is not persuaded it is sound. The case chiefly relied upon by the Court of Appeals for the Ninth Circuit in the Southern Pac. Co. v. Van Hoosear case supra, was Siler v. Louisville and Nashville R. R. Co., 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753, decided in 1909. Of the rule enunciated therein the Supreme Court later, speaking through Mr. Justice Sutherland in Hurn v. Oursler, 289 U.S. 238, 245, 53 S.Ct. 586, 589, 77 L.Ed. 1148, said: "But the rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct non-

4. 49 U.S.C.A., Ch. 1.

5. § 1337. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

6. Title 49 U.S.C.A. Ch. 1, Interstate Commerce Act.

7. 9 Cir., 72 F.2d 903, 911.

federal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal *cause of action.*"

▉ Passing for the nonce the court's inferentially expressed view that the complaint in this case states only a non-federal cause of action, some general well-established principles may be reviewed. The existence or non-existence of a federal question is to be determined from plaintiff's pleading, unaided by any defenses interposed or anticipated; and the development of a federal issue in the answer or upon trial cannot supply the defect in the original jurisdiction of the suit as one arising under the laws of the United States.[8] "The mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit, for if the plaintiff does not really rely upon a federal statute for his right to recover, or if the claim of right is plainly without color of merit or frivolous, jurisdiction does not exist."[9] "To confer jurisdiction on the Federal court under this statute (Section 24(1) Judicial Code), a right or immunity created by * * * the laws of the United States,

must be an element, and an essential one, of the plaintiff's cause of action. * * * '[A] suit does not * * * arise [under the laws of the United States] unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.'"[10]

▉ But, argues plaintiff, its complaint is subject to the construction it is proceeding under Section 9 of the Interstate Commerce Act, supra, to recover damages from a common carrier which is under the act. The fact that a carrier is under the act is not sufficient, in and of itself, to give this court jurisdiction over the subject matter of the action.[11] An analysis of plaintiff's theory, as developed upon the trial and as urged upon brief points that up. In effect it is this: The waybills show the origin and destination of the cars both to be in Kansas. An intrastate route exists over the track of the Kansas City Connecting Railroad Co. adjoining the stock yards. Although that company has no authority to carry on an intrastate business in Kansas, it does do so and therefore should be utilized as a link in the intrastate movement of the cars of coal. In other words, it seems, plaintiff takes the view this court should arrogate unto itself a power it clearly does not have to authorize and direct that the Kansas City Connecting Railroad Co. engage in intrastate commerce. The Kansas case cited by plaintiff for other purposes [12] suggests the dire result which might ensue should the railroad company engage in such commerce.

The court is of the opinion it lacks jurisdiction of the subject matter of the action and that the complaint fails to state a

---

8. Peyton v. Ry. Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525; Gully v. First Nat. Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Barnett v. Kunkel, 264 U.S. 16, 44 S.Ct. 254, 68 L.Ed. 539; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L. Ed. 1194.

9. Malone v. Gardner, 4 Cir., 62 F.2d 15, 18.

10. Viles v. Symes, 10 Cir., 129 F.2d 828, 830.

11. Pennsylvania R. Co. v. Public Utilities Commission, 298 U.S. 170, 56 S.Ct. 687, 80 L.Ed. 1130.

12. State ex rel. v. Kansas City Stock Yards Co., 94 Kan. 96, 145 P. 831, L.R.A. 1918B, 580.

claim upon which relief can be granted. No attempt will be made at this time to settle the findings of fact. The court is this date entering an order dismissing the action.